Peter Kiewit Sons' Company, appellee, v. National
Casualty Company, appellant.

8 N. W. (2d) 192

Filed February 17, 1943.   No. 31481.

*Swarr, May & Royce* and *James M. Paxson,* for appellant.

*Crofoot, Fraser, Connolly & Stryker, contra.*

Heard before Simmons, C. J., Rose, Eberly, Paine, Carter, Messmore and Yeager, JJ.

MESSMORE, J.

The plaintiff, construction contractors, brought this action against the National Casualty Company, surety on a bond, the conditions of which are hereafter set forth, for certain obligations incurred by the contractor, Roadmix Construction Company, in the performance of a road construction contract made by and between the Roadmix Company and the state of Nebraska. The claims of the plaintiff against the surety involved in the action are for obligations owed by the Roadmix company to plaintiff, consisting of rental charges for contractor's equipment supplied by plaintiff, and used in carrying on the work of the contract; cost of transportation of the plaintiff's rented equipment to and from the job; a fee for supervisory services rendered by plaintiff in the performance of the job pursuant to contract between plaintiff and the Roadmix company. Jury waived, case tried to the court. The court found in favor of the plaintiff and awarded judgment for $6,311.69 and interest. Motion for a new trial overruled. The defendant appeals.

To eliminate confusion, the plaintiff will be hereinafter referred to as Kiewit, the National Casualty Company as surety, and the Roadmix Construction Company as Roadmix.

On June 11, 1938, the contract between Roadmix and the department of roads and irrigation was entered into. It provided in part as follows:

"Party of the second part (Roadmix) further agrees to pay all just claims for material, supplies, tools, machinery and labor, and all other just claims filed against him or any of his subcontractors in carrying out the provisions of this contract and further agrees that the contractor's bond shall be held to cover all such claims." Roadmix "further agrees to perform the work under the direct supervision of the Department of Roads and Irrigation, subject to inspection at all times by the Secretary of Agriculture of the United States, or his authorized agents, and in accordance with the laws of the State of Nebraska." The consideration

was $40,964.09. Roadmix "agrees to construct in accordance with the plans and specifications," etc., "being items numbered 23 and 24 of Group 11 and 25, 26, 27, 28, and 29 of Group 14, Federal Aid Secondary Project No. FAS-38-A (1), in Cherry county, Nebraska. * * *

"That it is mutually understood and agreed by parties hereto that the general and detailed plans, the Standard Specifications for Highway Construction" and the contractor's bond are a part of the contract.

The bond provided in part:

"Now therefore, if said Roadmix Construction Corporation as principal shall in all respects fulfil this said contract according to the terms and the tenor thereof, and shall faithfully discharge the duties and obligations therein assumed, then the above obligation is to be void * * * ; otherwise to be and remain in full force and virtue in law.

"It is expressly understood and agreed that this bond is given to secure and does secure not only the faithful performance by the principal herein named of said contract for the construction work as specified in said contract and in strict accordance with the terms of said contract and the plans and specifications made a part thereof; but that it is given to secure and does secure also the payment by the said bounden Roadmix Construction Corporation of all just claims for material, lubricants, oil and gasoline used or consumed in the construction of the work, and for the payment of all laborers and mechanics for all labor performed in the work either by any subcontractor or otherwise in conformity with the provisions of Section 52-118 of the 1929 Compiled Statutes of Nebraska, and if such payments be made then this obligation shall be null and void."

Section 52-118, Comp. St. 1929, is in part as follows: That public boards empowered by law to enter into a contract for the erecting, furnishing or repairing of a public improvement, and any officer so empowered by law to enter into such a contract, "to which the general provisions of the mechanics' lien laws do not apply, and where the mechanics and laborers have no lien to secure the payment of

their wages and materialmen who furnish material for said work have no lien to secure payment for material furnished in said work, to take from the person, persons, firm or corporation to whom the contract is awarded a bond * * * conditioned for the payment of all laborers and mechanics for labor that shall be performed and for the payment for material which is actually used in the erecting, furnishing, or repairing of the building or in performing the contract."

The record discloses that difficulty arose with reference to the manner in which the terms of the contract were being performed by Roadmix, and it was to be terminated by the state. The president of Roadmix knew Kiewit was familiar with the job, and his grading outfit was on the job, and Kiewit was asked to intercede with the highway department and work out something that would permit Roadmix to retain control and finish the job. A contract was entered into by and between Roadmix and Kiewit, in part, as follows:

Roadmix "agrees to and hereby does employ Peter Kiewit Sons' Co. to supervise all work in the further performance of the contract * * * between" Roadmix and the department of roads.

"It is agreed that" Kiewit "shall have the exclusive and complete control of all work in the further performance of the contract, without interference by Roadmix." Roadmix "agrees to do, as directed by" Kiewit "any and all things necessary to the performance of the work under said contract in accordance with the purposes and terms of this Agreement." The contract also provided for diligent prosecution of the work by Kiewit, and Roadmix "agrees further to furnish and provide any and all funds necessary for the completed performance of said contract and this Agreement over and above the estimates paid on same."

"It is agreed that the wages at $65 per week of the Superintendent provided by" Kiewit "and all foremen's wages, shall be included and considered as a part of the cost of work and paid by" Roadmix. Roadmix "further agrees to pay for the gas and oil necessary in the operation of the

Superintendent's car." Kiewit "is to furnish all other necessary supervision without expense to Roadmix Construction Company."

"It is agreed further that any equipment furnished by" Kiewit "for use in the performance of the work, shall be paid for monthly at a fair rental value agreed upon before the equipment is moved on to the job. It is agreed further that Roadmix Construction Company should pay for the transportation of all equipment furnished by" Kiewit "to and from the job."

The contract had an addenda, signed by the parties, listing the work done prior to September 1, 1938, in a total amount of $10,786.77. Acting under and pursuant to the terms of the contract with Roadmix, Kiewit took over the job and supervision thereof. If there is liability on the part of the surety, then the evidence and accounting with reference thereto may be considered.

The defendant claims that by the terms of the bond it is a statutory bond, written in conformity with section 52-118, Comp. St. 1929, and defendant's position is best reflected by the following cases:

*Iddings Co. v. Lincoln Construction Co.*, 104 Neb. 124, 175 N. W. 643, is cited. The part thereof to which defendant directs our attention is contained in the opinon, reading: "The bond sued upon was given in conformity with section 3840, Rev. St. 1913. It follows that the parties to this litigation executed and delivered a statutory bond; that the bond must be interpreted and construed in connection with the provisions of this statute; that this statute gives to the bond a certain legal effect that is as much a part of the bond as though its terms were incorporated therein." The court further said: "The statute in this class of cases is the guide fixing the liability of the surety company, and we are constrained to follow it. The legislature intended to fix and did establish the liability in a situation like the instant case." Further language in this opinion is pertinent:

"In this connection here we have bonds given under this statute, and they should be liberally construed to effectuate

their purpose. Release of sureties, through mere technicalities, is not to be encouraged. * * * It is the spirit and intent of section 3840, *supra* (now section 52-118, Comp. St. 1929), to obligate a surety company to pay for material which is 'actually used in the erecting, furnishing, or repairing of the building or in performing the contract.' To permit anything else would be to deny the statute an opportunity to function as per the intent and purpose of the legislature. *United States v. Massachusetts Bonding & Ins. Co.,* 198 Fed. 924." The court added: "Section 3840, Rev. St. 1913, is in its nature remedial, and must be liberally construed."

In *American Surety Co. v. School District,* 117 Neb. 6, 219 N. W. 583, cited by defendant, in the opinion at page 20, we find the following language:

" 'The prevailing doctrine is that where the conditions of a statutory bond are separable and part are authorized by statute and part not authorized or even prohibited, and the statute does not expressly, or by necessary implication, declare it void as a whole, the conditions not authorized or prohibited may be rejected as surplusage, and the residue sustained as a good statutory bond *pro tanto,* the rule being the same as that applied to common-law bonds partly good and partly bad.' 4 R. C. L. 54, sec. 14.

" 'It has been frequently held that, in the absence of a prescribed statutory form, and of a declaration that bonds not in accordance therewith shall be void, if a bond be taken under a statute, with a condition in part prescribed by statute, and in part not so prescribed, yet, if it be clearly divisible, a recovery may be had upon it for a breach of the part prescribed by statute. The superadded part may be rejected as surplusage.' *Board of Education v. Grant,* 107 Mich. 151."

Defendant's contention is that in Nebraska provisions of a statutory bond that are not authorized by statute are rejected as surplusage and of no effect. Therefore, if the plaintiff is to recover, it must be by reason of the statutory bond furnished the state by defendant company, and plain-

tiff must prove its claim is for labor performed by laborers or mechanics or for material actually used in performing the contract.

In 1889 the legislature passed an act entitled "An Act to secure the payment of mechanics' and laborers' wages on all public buildings where the provisions of the general mechanics' lien laws do not apply." Laws 1889, ch. 28. In 1913 the act was amended by the insertion therein of certain provisions to secure payment of materialmen who furnished material for the construction of public buildings. Laws 1913, ch. 170. The act as amended became section 3840, Rev. St. 1913, and is now section 52-118, Comp. St. 1929. It was not until 1913 that the legislature of this state included materialmen within the protection of the bond provided for in this statute, "conditioned for the payment of all laborers and mechanics for labor that shall be performed and for the payment for material which is actually used in the erecting, furnishing, or repairing of the building or in performing the contract." Laws 1913, ch. 170; Rev. St. 1913, sec. 3840.

In *Nye-Schneider-Fowler Co. v. Roeser,* 103 Neb. 614, 173 N. W. 605, this court said: "Before our statute (Rev. St. 1913, sec. 3840) was enacted in 1889 (Laws 1889, ch. 28), the laborer or materialman who furnished labor or material for the erection of a public building had no protection except the responsibility of the contractor, and such bond as the contractor and the public officials might see fit to provide. * * * Then the statute was enacted requiring absolutely that one who contracted to build a public building which would not be subject to mechanics' liens must give bond to pay laborers and materialmen." See *Fremont Foundry & Machine Co. v. Saunders County,* 136 Neb. 101, 285 N. W. 115.

A further review of the Nebraska cases will be helpful in solving this proposition.

In *Sample & Son v. Hale,* 34 Neb. 220, 51 N. W. 837, on December 10, 1887, the board of public lands and buildings awarded to one John Layne a contract for the erection of

the industrial home at Milford, Nebraska. The contract provided, in part, that Layne "agrees to furnish all materials and labor necessary for the construction * * * further agrees to pay off and settle in full, with the parties entitled thereto, all accounts and claims that may become due by reason of laborers' and mechanics' wages, or for materials furnished or services rendered, so that each and all persons may receive his or their just dues in that behalf." The defendants in error, as sureties for Layne, with him gave a bond to the state. Among its provisions appears the following: "Now if John Layne shall faithfully keep and perform each and every one of the stipulations and agreements contained in the contract, and at times and in the manner therein specified, then this obligation to be void, otherwise to be and remain in full force and effect in law." The plaintiff furnished material for Layne and brought this action on the bond. The court held that the provision in the contract was not in excess of the powers of the state, and "the sureties on the contractor's bond for the faithful performance of the contract will be liable for debts arising under the above provision." The statute in force mentioned only laborers and made no reference to the protection of materialmen. The court said: "The rule is well established in this court that if one makes a promise to another for the benefit of a third person such third person may maintain an action upon such promise;" citing *Shamp v. Meyer*, 20 Neb. 223, 29 N. W. 379. See, also, *Lyman v. City of Lincoln*, 38 Neb. 794, 57 N. W. 531; *Korsmeyer Plumbing & Heating Co. v. McClay*, 43 Neb. 649, 62 N. W. 50; *Kaufmann v. Cooper*, 46 Neb. 644, 65 N. W. 796; all of like effect.

In the case of *Rohman v. Gaiser*, 53 Neb. 474, 73 N. W. 923, the defendant in error brought an action to recover for material furnished the contractor. The contractor agreed to settle and pay in full for all work and labor performed, and to settle for and pay all materialmen for all material actually furnished in the erection of the building. The bond provided that the contractor "shall well and truly

keep and perform each and every covenant, stipulation, and agreement contained in said contract and according to the plans and specifications on file * * * shall pay in full for all work done and labor performed, and shall pay all laborers' and mechanics' wages, and shall settle in full and pay for all material actually furnished in the construction, erecting, and completing said chapel," etc., then the contract was to be void. The contention of the plaintiff in error is that the clause in the bond requiring the contractor to settle in full was inserted without statutory authority therefor, and hence did not create a valid obligation. The court said: "This precise question was before this court in the case of *Sample v. Hale,* 34 Neb. 220, where it was held that such a provision was valid," and that the doctrine was subsequently approved in *Korsmeyer Plumbing & Heating Co. v. McClay, supra.* The court also said: "It is a proposition firmly established in the jurisprudence of this state that one not a party to a contract may maintain an action thereon, when such contract is made for his benefit or the benefit of a class to which he belongs." Citing *Cooper v. Foss,* 15 Neb. 515, 19 N. W. 506; *Shamp v. Meyer, supra; Doll v. Crume,* 41 Neb. 655, 59 N. W. 806; *Barnett v. Pratt,* 37 Neb. 349, 55 N. W. 1050.

The foregoing cases involve bonds given to a public body to secure the performance of public contracts entered into prior to the taking effect of the act of 1913, now section 52-118, Comp. St. 1929. The contention of the defendant is that in all of these cases the doctrine of enforcement of the provision of the bond beyond that part requiring payment of laborers would limit it to the material and materialmen, and would not cover the items as contended for by the plaintiff in the instant case. The principal case subsequent to 1913, when the provision of the statute (now section 52-118, Comp. St. 1929) went into effect, is *West v. Detroit Fidelity & Surety Co.,* 118 Neb. 544, 225 N. W. 673, an action against the surety of the subcontractor to recover for labor and material furnished in the construction of a public highway. There were several causes of ac-

tion. The bond provided: "If said Interstate Construction Company as principal, shall in all respects fulfil its said contract according to the terms and tenor thereof, and shall faithfully discharge the duties and obligations therein assumed, and shall pay for all labor, equipment, gasoline, oils, materials and supplies used or employed on said contract, then the above obligation is to be void and of no effect; otherwise, to be and remain in full force and virtue of law." In the above case contracts for the hauling of gravel were made with the owners of automobile trucks at a certain price per yard per mile. Arrangements were made by the contractor with certain garagemen and mechanics to make repairs to trucks upon orders of the contractor to whom they were to be charged. The contractor deducted the cost of repairs from the amount due for hauling. This court held "that the labor and materials used in making such repairs were 'supplies used or employed on said contract,' within the meaning of those terms, and chargeable to the surety." Likewise, gasoline and oil furnished drivers for their own trucks and charged against their contracts under the arrangement were held to be "supplies" and a proper charge against the surety; and groceries delivered upon order of the contractor to the foreman, whose wife carried on a cook shack on the job where employees could obtain their meals, the groceries being deducted by the contractor to whom they were charged from the foreman's wages, where it did not appear that any other workmen on the job patronized the cook shack, were held to be proper charges against the surety. The repairs and supplies, as above stated, were not mentioned in the bond in any way and only generally in the contract as supplies.

In this connection, it is defendant's contention that the "faithful performance" provision is for the security of the state against defaults of the contractor, has nothing to do with claims of third parties, and is as distinct as if contained in a separate instrument, citing Annotation, 118 A. L. R. 75, as follows: "A public contractor's bond to the

public body, conditioned merely for the faithful performance of the contract, is not for the benefit of laborers, materialmen, or subcontractors, and they cannot recover thereon;" that in *West v. Detroit Fidelity & Surety Co.*, *supra*, the case arises out of a public work, but the bond was not given to the public body and was not, therefore, a statutory bond; further, that it was much broader than the bond in question and covered "all labor, equipment, gasoline, oils, materials and supplies used or employed on said contract;" that the charges were, in reality, a part of the labor or wages of the drivers of the trucks.

With reference to the defendant's contention that the "faithful performance" provision is for security of the state against default of the contractors has nothing to do with claims of third parties and is distinct and separate therefrom, the Nebraska cases cited are not in accord and agreement with such statement. However, even if true, we believe that the claims of the items furnished by the plaintiff in the instant case are covered by what the defendant chooses to call the second condition of the bond,— that the bond is given to secure and does secure also the payment by said bounden Roadmix of all just claims for material, lubricants, oil and gasoline, used or consumed in the construction of the work and for the payment of all laborers and mechanics for all labor performed in the work, either by subcontractors or otherwise, in conformity with the provisions of section 52-118, Comp. St. 1929, and that part of said section 52-118 pertinent to the bond is: "conditioned for the payment of all laborers and mechanics for labor that shall be performed and for the payment for material which is actually used * * * in performing the contract."

The Nebraska case of *Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co.*, 98 Neb. 27, 151 N. W. 942, is cited as authority for the foregoing statement. In that case the court held the bond in question "must be construed to cover all labor and materials involved in the work specified in the contract; that is, that enter into the structure or are con-

sumed in and about the work, but not for tools and appliances which are the property of the contractors and may be used from time to time in other works and upon other contracts, and which are not consumed in the work or which do not go as a part of the building or improvement and necessarily enter therein. The use of an engine for hoisting materials, the repairs on such engine, and oil and fuel used in operating the same are not guaranteed by the surety."

The given distinction between the latter case and *West v. Detroit Fidelity & Surety Co.*, *supra*, is that the bond in the *Nye-Schneider-Fowler* case was only for the payment of laborers and did not cover supplies used or employed on said contract. This court has never passed specifically on whether equipment rental should be recoverable as "materials" under a construction contract bond. In *West v. Detroit Fidelity & Surety Co.*, *supra*, this language is used (p. 555): "The bond does not require that the supplies enter into and become a part of the construction, as is generally the case in mechanics' liens, but only that they be used or employed on said contract." This statement discloses the trend of this court in interpreting the second condition of a bond, a trifle more broad but very similar to the one in the case at bar. The following cases are in explanation of a condition in such a bond as the second condition in the bond here under discussion:

In *Nicks v. Baird & Co.*, 165 Tenn. 89, 52 S. W. (2d) 147, the complainant was the owner of a steam boiler, which he rented to Baird & Company for use in the execution of a contract to construct a state highway bridge. It was used to generate power to force water through hollow piles, and this equipment was necessary to operate the water pump, Baird's equipment being inadequate. The court held (52 S. W. (2d) 147): "Surety of state highway .contractor held liable for rental * * * under statutory bond for payment of labor and 'materials.'" The condition of the bond was that the contractor "shall well and truly pay every person furnishing material or performing labor in and

about the construction of said roadway, all and every sum or sums of money due him, them or any of them, for all such labor and materials for which the contractor is liable." The statute cited required that the contractor execute a bond, conditioned to secure "the payment for all materials purchased and for all labor employed in the contemplated work." The complainant contended that the boiler was material used in the construction of the bridge. The court held that it was, even though complainant's boiler was not a part of the regular equipment of the contractor, but was engaged for a particular and special use. In the instant case the equipment was regular equipment for a contractor employed in such work.

In the case of *Nicks v. Baird & Co., supra,* the statute in question was under Acts 1917, ch. 74, as reflected in the case of *Southern Construction Co. v. Halliburton,* 149 Tenn. 319, 258 S. W. 409, wherein it was said: "Under the act of 1917, the general contractor and his surety are bound for all materials purchased and labor employed in the work." Section 52-118, Comp. St. 1929, reads: "conditioned for the payment of all laborers and mechanics for labor that shall be performed and for the payment for material which is actually used * * * in performing the contract." The Tennessee statute eliminates the part materials actually used in performing the contract, which accounts for the statement in *Nicks v. Baird & Co., supra.* It is not necessary in Tennessee that materials to be lienable must be incorporated into the structure or public work for which the principal contract was executed. And it is true that the holding goes further in explanation of the subject-matter than the foregoing conclusion; but the Tennessee statute provides that the surety is bound for all material purchased and labor employed in the work, so that the effect of both statutes, in that labor and material must be consumed in the work, is similar.

In the case of *Pittsburg Coal Co. v. Southern Asphalt & Construction Co.,* 138 Tenn. 154, 196 S. W. 490, as set forth in *Nicks v. Baird & Co., supra,* coal used for generating

steam in complainant's boiler was material used in the performance of the bridge contract, within the application of the statute and bond. If pumps, operated by manpower rather than steam, had been used, the wages of the men so employed would have been covered by the bond. The boiler was material, by the use of which energy in the coal was released and directed as a substitute for labor of men, and contributed to the execution of the contract in the same relative degree as did the coal fed into its fire-box. "Compensation of the owner who supplied it is therefore within the principle given effect by the legislature, in its enactment of the statute requiring the execution of bond for the protection of furnishers of labor and material." The court in the *Pittsburg Coal Co.* case said: "The statute under consideration was passed for the protection of laborers and furnishers of material on public works, and the inquiry should not be limited to the method by which the contract is performed."

As said in the *Nicks* case: "The essential requirement that materials be consumed in the execution of the principal contract, in order that their cost be secured by a lien on the building constructed, or by the contractor's bond for a public works project, is supported by two obvious reasons. If the material furnished is not consumable in the use, it is furnished on the general credit of the contractor and not merely in aid of the performance of the particular contract. And if on the completion of the building or project the material, still possessing value, remains the property of the contractor, liability for its cost should be and is his liability alone. * * * But neither of these reasons is present when all that is purchased is the use of material in the execution of a particular contract, under an agreement of hire or lease. In such case all that is purchased is consumed in the use, in aid of the contract."

In *Illinois Surety Co. v. John Davis Co.,* 244 U. S. 376, 37 S. Ct. 614, a contractor for the construction of the naval training station in Chicago executed a bond under a federal statute which required that the bond include the

obligation to "promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work." This obligation is no different from the language of our statute (Comp. St. 1929, sec. 52-118), "conditioned for the payment of all laborers and mechanics for labor that shall be performed and for the payment for material which is actually used * * * in performing the contract." The bond in the instant case does secure the payment of "all just claims for material, lubricants, oil and gasoline used or consumed in the construction of the work, and for the payment of all laborers and mechanics for all labor performed in the work either by any subcontractor or otherwise in conformity with the provisions of section 52-118," Comp. St. 1929. In the above case a claim for rental of cars, track and equipment used at the station was sustained by the supreme court of the United States as a claim for material supplied. The court said: "The equipment was used in the prosecution of the work. * * * The expense of loading and freight were properly included with the fixed rental as recoverable under the bond."

In *Multnomah County v. United States Fidelity & Guaranty Co.*, 87 Or. 198, 170 Pac. 525, Annotation, 44 A. L. R. 383, it appears that, by the terms of a contract for the improvement of a highway, a construction company agreed to pay promptly for all labor or material supplied for the prosecution of the work, and gave a bond to that effect. It was held that the rental of a caterpillar engine was within the bond as being covered by the language of the contract and bond, although it was admitted that, according to the strict legal definition of the term, "labor and material," the use of the engine would not be embraced in such term.

It is true, as stated in Annotation, 44 A. L. R. 381, "there is considerable conflict as to whether the contractor's bond covers a claim for the rental of equipment used in the prosecution of the work, the decision depending not only on the terms of the various statutes, but on the courts' interpretation thereof."

Many other cases adhering to the principle of the fore-

going cases might be cited, and there are numerous cases to the contrary that support defendant's position that the items, such as sued for by plaintiff, are not included within the concept of the statute or the bond as "materials" furnished and consumed under the obligations of the contract.

Again, considering the bond in the case before us, it recites that it is given to secure and does secure also payment by the said bounden Roadmix "of all just claims for material, lubricants, oil and gasoline used or consumed in the construction of the work."

The equipment furnished by plaintiff was not a part of the regular equipment of Roadmix, but a part of regular equipment ordinarily used by a contractor engaged in road construction. The use of this equipment, so rented and transported to and from the job as occasion required, under the supervision of plaintiff's engineer, contributed directly to the construction of the highway. The value of that use (and that is what rental is) is within the protection of, contemplated and intended by the statute and the bond and one not too remotely connected with the principal work. The rule adhered to in some jurisdictions, that the materials to be lienable must be incorporated into the structure or public work for which the contract was executed under the circumstances here existent, is too narrow, under a liberal interpretation of the statute, as required. In fact, the machinery or equipment, placed on the job by plaintiff and rented by Roadmix, transported to and from the job as required, constituted material actually used in the construction and repair of the highway.

We conclude that the items sued for by plaintiff are recoverable under the statute and bond. Such items so furnished constitute labor and material purchased under an agreement of hire or lease, in that all that is purchased is consumed in aid of the contract, within the meaning of the second condition of the bond and of section 52-118, Comp. St. 1929, "conditioned for the payment of all laborers and mechanics for labor that shall be performed and for the payment for material which is actually used * * * in performing the contract."

The record reflects certain charges for transportation of equipment to and from the job, the rental for use of equipment, and other items, and certain credits to which Roadmix claims to be entitled. Most of the evidence deals with these items and explanation thereof, and with the reasonableness or unreasonableness of the charges made. The trial court allowed recovery for the amount the plaintiff prayed. The plaintiff specifically states that, although legally entitled to seek and recover judgment from the defendant for the amount so proved, the plaintiff did not desire at the time suit was filed, and does not now seek, recovery for any more than the balance due on its general account with Roadmix. The proof of the plaintiff went to the amount of some $7,351.56, and allowing the defendant all credits to which it would be reasonably entitled, the amount would, in no event, be reduced below the amount recovered by the plaintiff.

Giving due consideration to the foregoing, it is unnecessary to further pursue the accounting reflected in the record.

AFFIRMED.

Rose and Eberly, JJ., not participating.