## HIGGINS & COUFAL v. MASSACHUSETTS BONDING & INSURANCE CO. (CENTRAL DRAINAGE & CONSTRUCTION CO. et al., Third-Party Defendants).

Civ. A. No. 3–53.

United States District Court
D. Nebraska, Omaha Division.

May 25, 1953.

L. F. Otradovsky, Schuyler, Neb., for plaintiff.

Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for defendant and third-party plaintiff.

DONOHOE, Chief Judge.

This action was originally instituted in the District Court of Colfax County, Nebraska, by Higgins and Coufal, a copartnership, the members of which are citizens of Nebraska, against the Massachusetts Bonding and Insurance Company, a Massachusetts corporation, to recover on a construction contract bond. Pursuant to section 1442, Title 28 U.S.C.A., the defendant bonding company removed the action to this court which has jurisdiction by reason of the fact that there is diversity of citizenship and the amount involved exceeds $3,000, exclusive of interest and costs. 28 U.S.C.A. 1332. Before service of its answer the defendant bonding company by motion, proper in form, requested leave to bring into this action as third-party defendants, the Central Drainage and Construction Company, and Edward and Delores Cerovski, the principal obligors for whose benefit the indemnity bond was issued. The request was granted, rule 14, Federal Rules of Civil Procedure, 28 U.S.C.A.; and process was served upon the third-party defendants. However, they neither answered nor entered their appearance and consequently they are now in default. Rule 55(a), Federal Rules of Civil Procedure, 28 U.S.C.A. In the absence of a request by either party for a jury, this action was tried to the court, rules 38 and 39, Federal Rules of Civil Procedure, 28 U.S.C.A. The court, in keeping with rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A., makes the following special

Findings of Fact.

On June 20, 1950, the Central Drainage and Construction Company, third-party defendants herein, entered into two contracts with the Department of Roads and Irrigation of the State of Nebraska covering certain construction work. The first contract related to work on the Platte River near Yutan in Saunders County, Nebraska. The second contract covered a project near Talmage in Otoe County, Nebraska. Before entering upon performance of either of these contracts, the Central Drainage and Construction Company filed performance bonds in the sum of $10,162, for the Yutan Project, and in the sum of $9,659.10, for the Talmage Project. These bonds were executed by the Central Drainage and Construction Company as principal and the Massachusetts Bonding and Insurance Company, defendant herein, as surety. Among other things, these bonds provided:

> "It is expressly understood and agreed that this bond is given to secure and does secure not only the faithful performance by the principal herein named of said contract for the construction work as specified in said contract and in strict accordance with the terms of said contract and the plans and specifications made a part thereof; but that it is given to secure and does secure also the payment by the said bounden Central Drainage and Construction Company, of all just claims for materials, supplies, tools, fuel, lubricants, equipment rental, machinery, insurance premiums, and services used or consumed in the construction of the work by him or any of his subcontractors, and for all other just claims filed against him or any of his subcontractors in carrying out the provisions of this contract, and if such payments be made then this obligation(s) shall be null and void; otherwise it shall remain in full force and effect."

In connection with the performance of these construction contracts, the Central Drainage and Construction Company ordered certain materials and supplies from Higgins and Coufal, a copartnership dealing in building materials. These materials were delivered with the understanding and verbal agreement between the Central

Drainage and Construction Company and Higgins and Coufal that the Construction Company need not pay for the materials until the projects were completed and the State had made payment in keeping with the terms of the construction contracts. However, both Higgins and Coufal and the Construction Company assumed as a basis for their agreement that the projects would be completed in due course and within a reasonable time. In this connection, Mr. Cerovski, president of the Construction Company, testified (and his testimony was not rebutted nor contradicted) that he did not consider that abandonment of either or both of the projects would excuse his corporation from paying for the materials supplied.

Higgins and Coufal notified the Massachusetts Bonding and Insurance Company of the beforementioned understanding by a letter, dated June 24, 1950, to Mr. K. J. Folda, their agent, which reads as follows:

"Dear Kite:

"This will advise you we have agreed to carry Ed Cerovski's account for material on the Talmage and Yutan jobs, until they are completed and he receives payment from the state.

"Sincerely
"Higgins and Coufal
"Martin J. Higgins /s/"

For the Talmage job the Construction Company ordered Creosote piling from the plaintiff partnership. Pending arrival of these materials, the Construction Company obtained some piling from the Midwest Lumber, Bridge and Supply Company of Lincoln, Nebraska, and used this material in the project. Later, when the material from Higgins and Coufal arrived at Talmage, the Construction Company used part of it (valued at $532.32) to repay in kind and quantity the Midwest Lumber, Bridge and Supply Company for the material previously furnished and used the balance of the materials to complete the Talmage Project. Thus, all of the material furnished to the Construction Company by Higgins and Coufal for the Talmage Project was used and consumed either directly or indirectly in the completion of that project. The agreed price, and fair and reasonable value, of the piling furnished by Higgins and Coufal to the Construction Company for this project was $2,602.38. On March 20, 1951, the president of the Construction Company, Ed Cerovski, paid $510.50 on this account; consequently, there is a balance of $2,091.88, with interest, still due and owing. The Talmage Project has been fully completed.

Higgins and Coufal also furnished the Construction Company material at the agreed price, and reasonable value, of $3,169.68, for the Yutan Project. All of this material was used and consumed in the project. Because of high river conditions and certain difficulties the Construction Company had with the State Engineers, the Yutan Project was not finished in due course; nor was it completed within a reasonable time. Although the project was started in 1950, it has not yet been completed; and the evidence indicates that in all probability, it will never be completed by the Central Drainage and Construction Company.

Having made demand upon the Central Drainage and Construction Company for payment, and having been refused payment, Higgins and Coufal instituted this action against the Massachusetts Bonding and Insurance Company.

Discussion.

The bond in suit is a statutory bond written in conformity with section 52–118, R.R.S.Neb., 1943, and must be construed and interpreted in connection with the provisions of this statute. Iddings Co. v. Lincoln Construction Co., 104 Neb. 124, 175 N.W. 643. The statute provides:

"It shall be the duty of the Board of Educational Lands and Funds, county boards, the contracting board of officers of all cities, villages, and school districts and all public boards empowered by law to enter into a contract for the erecting and finishing, or the repairing of any public building, bridge or other public structure or improvement, and any officer or officers so empowered by law to enter into such con-

tract, to which the general provisions of the mechanics' lien laws do not apply, and where the mechanics and laborers have no lien to secure the payment of their wages and materialmen who furnish material for such work have no lien to secure payment therefor, to take from the person, persons, firm or corporation to whom the contract is awarded a bond, in a sum not less than the contract price, with at least two good and sufficient sureties, or in lieu thereof, by one surety company, conditioned for the payment of all laborers and mechanics for labor that shall be performed and for the payment for material which is actually used in the erecting, furnishing or repairing of the building or in performing the contract. Such bond shall be to the board awarding the contract, and no contract shall be entered into by such board until the bond herein provided for has been filed with and approved by such board. The bond shall be safely kept by the board asking the contract, and may be sued on by any person entitled to the benefit of this section. The action shall be in the name of the party claiming the benefits of this section." R.R.S., 1943, § 52–118.

This statute makes it clear that the bond is given to secure payment for material which is actually used in performing the contract. Peter Kiewit Sons' Co. v. National Casualty Company, 142 Neb. 835, 8 N.W.2d 192. All material for which recovery is sought in this action was so used. In addition to the words of the statute, the bond itself provides that it is given to secure payment by the contractor "of all just claims for material * * * used or consumed in the construction of the work by (the contractor) * * * and for all other just claims filed against him or any of his subcontractors in carrying out the provisions of this contract." These words of the bond, read in the light of the statutory basis for such bonds, are, in the opinion of the court, sufficiently broad enough to cover the entire claim for all the materials furnished by Higgins and Coufal to the Central Drainage and Construction Company.

Higgins and Coufals' agreement with the Construction Company to carry its account until the projects were finished (assuming that they would be completed in due course) did not relieve the Massachusetts Bonding and Insurance Company of its obligations under the bond. For even if this oral understanding were construed as an extension agreement the surety would not be discharged.

> "In accordance with the rule that a surety company can be relieved from its obligation for suretyship only where a departure from the contract is shown to be a material variance, it is held that an extension of time will not relieve a surety company on a bond unless the extension exceeds the time limited in the bond for bringing suit thereon, or unless the surety company is thereby made to suffer material harm; and that there will be no presumption of injury unless injury is alleged and proved." 50 Am.Jur., Suretyship, Sec. 322, p. 1116.

The time limit for bringing an action on the bond involved in this case is five years and will not elapse until 1955; and there is no showing in this case of material harm to the surety by reason of the verbal agreement.

The partners have done all that their verbal understanding required them to do. They carried the construction company's account until the Talmage Project was completed and until such time as it became reasonably apparent that the Yutan job would not be completed.

Since the plaintiff partners have made demand upon, and been refused payment by, the Construction Company, for the materials furnished, they are now entitled to bring this action in their own behalf, Peter Kiewit Sons' Co. v. National Casualty Company, supra, and under the circumstances should recover judgment. Higgins and Coufal are entitled to recover $5,261.56, with interest, from the Massachusetts Bonding and Insurance Company and the Massachusetts Bonding and In-

surance Company is entitled to recover the same amount from the third-party defendants, the Central Drainage and Construction Company and Edward and Delores Cerovski.

Counsel for the Massachusetts Bonding and Insurance Company shall prepare and submit for approval the appropriate judgment to be entered in accordance with this memorandum.