544

EDWIN E. WEST ET AL., APPELLEES, V. DETROIT FIDELITY &
SURETY COMPANY, APPELLANT.

FILED MAY 29, 1929. No. 26593.

*Burkett, Wilson, Brown & Wilson,* for appellant.

*Pitzer & Tyler* and *Lloyd E. Peterson, contra.*

Heard before Goss, C. J., Dean, Good, Thompson, Eberly and Day, JJ., and Chase and Redick, District Judges.

Redick, District Judge.

Action against the surety of the subcontractor to recover for labor and material furnished in the construction of a public highway. The petition declares upon fourteen causes of action, two of which belong to the plaintiffs and the twelve others being assigned to the plaintiffs for the purpose of suit. The plaintiffs dismissed the eleventh and fourteenth causes of action, and a verdict was rendered for plaintiff against the defendant on the other twelve, upon

which verdict judgment was rendered, and the defendant appeals.

The state of Nebraska and Otoe county entered into a contract with Stevens Brothers for the graveling of a certain road from Dunbar to Syracuse in Otoe county, Stevens Brothers and the Northwestern Casualty & Surety Company executed a bond to the department of public works of the state for the faithful performance of said contract. Stevens Brothers sublet the contract to the Interstate Construction Company, and the defendant, Detroit Fidelity & Surety Company, executed a bond to Stevens Brothers containing the following condition:

"Now, therefore, if said Interstate Construction Company as principal, shall in all respects fulfil its said contract according to the terms and tenor thereof, and shall faithfully discharge the duties and obligations therein assumed, and shall pay for all labor, equipment, gasoline, oils, materials and supplies used or employed on said contract, then the above obligation is to be void and of no effect; otherwise, to be and remain in full force and virtue of law."

"The surety on this bond given to guarantee the faithful performance and execution of the work included in the contract shall be deemed and held, any contract to the contrary notwithstanding, to consent without notice: To any extension of time to the contractor in which to perform the contract when each particular extension does not exceed sixty days."

The bond recited the awarding of the subcontract by Stevens Brothers to the construction company, and made it a part of the bond. The original contract between the state and Stevens Brothers provided for the completion of the work by September 1, 1925, but also provided that such time might be extended by the department of public works, and the subcontract contained the following provision: "We, Stevens Brothers, agree to give any extensions of time we may receive from the department of public works to the subcontractors." Five extensions of time were granted as follows: To October 1, 1925; to December 1, 1925; to Feb-

ruary 1, 1926; to April 1, 1926, and to June 1, 1926. The work was completed about June 1, 1926, but the claims for labor and material now held by the plaintiffs remained unpaid, and the action is brought to recover the same from the surety.

The defendant, for the reversal of the judgment, presents three grounds which we deem it necessary to consider:

1. That the petition does not show that the plaintiffs have a right to maintain the action. The point made is that under section 3224, Comp. St. 1922, providing that, in contracts for public work to which the general provisions of the mechanics' lien laws do not apply, and where the mechanics and laborers have no lien to secure the payment of their wages, and materialmen who furnish material for said work have no lien to secure payment for the material furnished in such work, a bond shall be required which shall be conditioned for the payment of all laborers and mechanics and for material used in performing the contract, and providing that such bond "may be sued on by any person entitled to the benefit of this chapter. The action shall be in the name of the party claiming the benefit of this chapter"—plaintiffs are not within the class who may sue. The chapter containing the above section includes the mechanics' lien law, and the argument is that, inasmuch as plaintiffs are not entitled to a mechanics' lien, they have no right of action upon the bond. We think the contention unsound. The very purpose of the section in question was to protect persons who were not entitled to mechanics' liens, and this purpose would be entirely defeated if this construction were adopted. The plain intention of the legislature as expressed here will control general terms; moreover, the greater includes the less, and the right is extended to any one who claims the benefit of any provision of the chapter.

It is further contended on this point that the bond is a substitute for mechanics' liens, and that, inasmuch as the right to a mechanics' lien is not assignable (*Noll v. Kenneally*, 37 Neb. 879), the right to sue upon the bond is not. Neither the case above referred to, nor any other to which

our attention has been called, holds that the account which may furnish the basis for a mechanics' lien is not assignable, but merely that the assignor could not thereafter prove a lien because he had disposed of the claim and that the assignment of the debt did not have the effect to transfer a right to perfect and enforce a lien. In this case the assignment of the various claims to the plaintiffs invested them with the right to sue thereon in their own names, as provided by section 8526, Comp. St. 1922. It is well established in this state that a bond such as the one in suit is a contract made for the benefit of the parties furnishing labor and materials in performance of the principal contract, and that such persons have a right to sue thereon in their own names. *Rohman v. Gaiser*, 53 Neb. 474, was an action on a bond given for the performance of a public building contract, conditioned for the payment of labor and materials furnished the contractor, and it was held: "One not a party to a contract may maintain an action thereon when such contract was made for his benefit or the benefit of a class to which he belongs."

2. That because of the fact that three of the extensions granted were for 61, 62, and 61 days, respectively, the surety upon the bond was thereby released. A number of cases are cited to the proposition that an extension of a contract between the parties thereto, based upon a valuable consideration, without the knowledge or consent of the surety, releases the surety, which is undoubtedly a correct statement of the general rule. Among other cases defendant cites *Schwartz v. American Surety Co.*, 231 Mass. 490, where the condition of the bond of a building contractor was for the faithful performance of a contract to build a house to be completed by November 1, and it was held that an extension of the time for the completion of the house until Christmas of that year discharged the surety. The bond in that case was not conditioned for the payment of the material and labor entering into the construction of the building, and the rights of persons furnishing the same were not in controversy. Also, *Forburger Stone Co. v. Lion*

*Bonding & Surety Co.,* 103 Neb. 202, in which it was held that, as between the contractor and the surety, a failure to give a notice provided by the contract would release the surety; but, as the contract for the performance of which the bond was given provided that the contractor should pay for all materials which he used in the building, it was further held that the contract was of a dual nature, and that materialmen who had furnished material prior to the default in the giving of the notice were not affected thereby and might recover to that extent upon the bond as having been made for their benefit. In all of the cases cited under this rule the claims could have been protected by the filing of mechanics' liens.

In the case of *Doll v. Crume,* 41 Neb. 655, the contract for the grading of a street was involved, containing a provision that the contractor should pay for all labor and material furnished him in executing the contract, and the defendants executed a bond guaranteeing "that the party of the second part (the contractor) will well and truly perform the covenants hereinbefore contained to pay all laborers employed on said work; and if said laborers are not paid in full by said party of the second part, that said party of the third part (sureties) hereby agrees to pay for said labor, or any part thereof," and it was held that an extension of the time for performance of the contract did not release the sureties from their contract to pay the laborers, and that the plaintiff, one of said laborers, might sue upon the contract in his own name as having been made for his benefit.

The rule contended for applies to the case of voluntary sureties who become such without consideration, but it is said in a note to 33 L. R. A. n. s. 513, that "the overwhelming weight of authority supports the proposition that the rule of *strictissimi juris,* by which the rights of uncompensated sureties are determined, is not applicable to the contracts of surety companies, which make the matter of suretyship a business for profit; that their business is essentially that of insurance." To the same effect, see 22 Cyc. 306.

A distinction is made in the cases between a voluntary surety and one who becomes such for compensation as a regular business, that in the former case any extension of time or other change in the contract without the consent of the surety will result in his release; while in the latter case, before such result obtains, it must appear that the surety has suffered some injury or been subjected to loss by reason of the change. *Philadelphia v. Fidelity & Deposit Co.*, 231 Pa. St. 208; *People v. Bowen*, 187 Mich. 257; *Standard Salt & Cement Co. v. National Surety Co.*, 134 Minn. 121; *People v. Traves*, 188 Mich. 345; *Guaranty Co. v. Pressed Brick Co.*, 191 U. S. 416.

It will be noted that two of the extensions exceeded the limit of 60 days by one day and one by two days. In the ordinary use of language one month is generally considered the same as 30 days; one month and 30 days, and two months and 60 days, might be considered as practically synonymous terms. It was held in *People v. Ulrich*, 2 Abb. Pr. (N. Y.) 28, that a notice to quit in thirty days was a substantial compliance with the statute requiring one month's notice, as in that case the notice was given in April, a month containing 30 days. We do not find it necessary to determine this question. The extensions of time in the present case were valid for a period of 30 days and 60 days, respectively, within the terms of the consent of the surety, and we have the situation of an extension for one or two days without such consent. It is not claimed by the surety that it suffered any damage by reason of these extensions, and within the reasoning of the authorities above cited, its release was not thereby effected.

3. It is further contended by the defendant that a large number of items contained in the several causes of action do not come within the terms of the bond. This requires an examination of the various items of the account presented by the evidence.

Objections are made to a number of items allowed by the district court as properly chargeable to the bond, on the ground that they do not fall within the terms of the condi-

tion of the bond that the obligee "shall pay for all labor, equipment, gasoline, oils, materials and supplies used or employed on said contract." The subjects of these objections may be divided into three classes which will now be explained and considered.

(1) A large number of auto trucks were used in the transportation of gravel from the pits for use on the highway. A few of these trucks were owned by the construction company, but many more were owned by the drivers thereof. The drivers who owned their own trucks were paid according to the amount of gravel hauled at so much per yard per mile. At the commencement of the work the construction company made arrangements with several mechanics operating garages to make repairs upon and furnish parts and accessories for all the trucks used on the job, including those owned by the respective drivers. The construction company gave orders to the mechanics for repairs and supplies to the trucks, which were charged to the company and deducted from the amount due the drivers respectively, monthly statements being rendered to the company for this purpose. Upon completion of the work the bills for these repairs and supplies were unpaid, and the claims for the balance due form a part of the first and second causes of action.

The claim of the defendant is, inasmuch as the owners of the trucks were paid by the yard, it was their duty to keep their own trucks in proper repair, and that the repairs and supplies covered by these bills were furnished and properly chargeable to the drivers and not to the construction company as entering into the expense of the project. We think, however, that there is no proper basis for distinguishing between the repairs and supplies furnished to the drivers owning their trucks and those furnished for trucks belonging to the company, under the circumstances above related. The items were not charged to the drivers but to the construction company which used the amount thereof in part payment of the contract price for hauling the gravel. These bills were incurred by the contractor as a part of the cost of

the project, and represented labor, materials and supplies used and employed on said contract. The cost of the work was not increased by the method pursued, for it may be assumed that, if the bills for these materials had not been deducted from the contract price for hauling gravel, such price would not have been paid in full and a claim therefor would be clearly within the terms of the bond. The claimants are in the position of having furnished labor and materials used in the performance of the contract, and are entitled to the protection of the bond. Suppose the owners of the gravel pit had refused to deliver the gravel unless the construction company would consent that the account therefor be charged to it, and, such consent being given, the company charged the cost of the gravel to the contracts of the respective drivers; we are of opinion that, beyond question, the persons furnishing the gravel which was used on the project would be entitled to the protection of the bond. We think the supposititious case presents a true analogy to the one before us. Defendant cites *Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co.*, 98 Neb. 27, holding that "the use of an engine for hoisting materials, the repairs on such engine, and oil and fuel used in operating the same are not guaranteed by the surety." But in that case the bond was only for the payment of laborers, and did not cover "supplies used or employed on said contract."

(2) The second class of charges to which objection is made is for groceries and provisions supplied to the employees engaged on the project. These are presented in the fourth, tenth and twelfth causes of action and may be subdivided into two classes: (a) Supplies furnished individual employees, and (b) those furnished foreman Bell whose wife conducted a boarding shack located on the project. In both classes the supplies were furnished upon written orders of and charged directly to the contractor, by whom the amounts thereof were deducted from the wages of the employees respectively. With reference to class "a," the situation does not differ from the furnishing of repairs and supplies to the drivers of trucks above discussed, and for

similar reasons are proper claims against the bond. The work under the contract was to be performed in a rural community where the laborers might not be able to secure credit for their subsistence while employed thereon. It was quite proper for the contractor to arrange for such supplies to be used in advancing the work to be done under the contract, and in that sense they entered into and became a component part of the work. The cost of these supplies was used by the contractor in part payment of the wages of the employees, was a substitute therefor, and, except as to some items inconsiderable in amount, were consumed on the project. *Bricker v. Rollins & Jarecki,* 178 Cal. 347; *Brogan v. National Surety Co.,* 246 U. S. 257.

As to class "b," the objection is that it was an independent undertaking on the part of the foreman and his wife-for the purpose of making a profit. We do not so consider it. The boarding house was established for the convenience of the employees and other persons engaged upon the project, who either paid for their meals or the same were charged to the contractor and deducted from the payroll. Counsel for appellant argues "as to the provisions, it would be charging the provisions for the board and keep of the men who worked by the job, and not only these men, but also their families. If the men who owned the trucks and hauled the gravel should have been farmers residing in that community, it would be just as logical to charge the grocery bills of these farmers to the bondsman as to charge the various articles mentioned in these causes of action to the bondsman." This argument leaves out of consideration the facts that the articles were sold and charged to the contractor and the amounts deducted from salaries and wages. They were, therefore, used and consumed on the project. This is not a case where the employees procured the supplies upon their own credit, in which event they would not be so directly connected with the work as to become a part of it. It is a case where the contractor extended his credit for the purpose of insuring the advancement and accomplishment of the work, thus establishing a direct connection

with the project. It does not appear that the Bell shack was maintained for the benefit of any persons not employed upon the job, and the cost of the supplies thereto were deducted by the contractor from the wages of the employees. In this situation the claim that Mrs. Bell made a profit in conducting the shack would be immaterial. If these supplies had been delivered to the contractor and by him distributed to persons employed on the job, either as raw material or cooked ready for consumption, deducting the price from their wages, we think they would be a proper charge against the bond, and the manner in which the result was accomplished presents no different case in principle. Counsel for defendant say in their brief: "It may be that under the broad provisions of the bond in question it would be liable for provisions furnished the subcontractor," if it "were employing its men at so much a day or at so much per hour, including board. Such is not the case here." In fact, however, the supplies, while delivered to the men, were furnished to the contractor, on his credit. The contractor made no profit on the supplies but simply used them in payment of wages. We think no just differentiation can be made between the two situations. Defendant cites *Brogan v. National Surety Co.*, 246 U. S. 257, holding that supplies furnished for a boarding house conducted by the contractor as an independent enterprise were not a charge against the bond; but it was there held that the furnishing of the board was an "integral part of the work and necessarily involved in it." While in that case the contract of employment included board, we think there is no basis for a substantial distinction where, as here, credit was furnished for board by an arrangement between the contractor and merchant, accepted by and acted upon by the employee. Also, *Silver v. Harriss,* 165 La. 83. The bond in that case covered "work done, labor performed, or material furnished," which is not as broad as the bond in suit which covers "supplies used or employed on said contract." While we think that only such "supplies" as enter into the performance of the contract may be charged to the surety, those for which claim is made

are of that character. The bond does not require that the supplies enter into and become a part of the construction, as is generally the case in mechanics' liens, but only that they be used or employed on said contract. Also, *Carter County v. Oliver-Hill Construction Co.*, 143 Tenn. 649, to the effect that a merchant who cashed in merchandise pay checks of employees of the contractor but took no assignment of the laborers' claims had no claim against the bond. The case was thought to be analogous to that of a bank which cashed pay checks, and the ruling was based upon *United States v. Rundle,* 107 Fed. 227, which presented that situation. While this case may be distinguished from the present one, the bond covering only labor and material "used in the construction of the roads," and the claims being for payment of pay checks or orders, regardless of these differences, we are not inclined to follow it, especially as its analogy with the case cited in its support appears imperfect. In the *Rundle* case the arrangement was for a loan, while in the former, it was merely for convenience in performing the contract. We conclude that the groceries for which claim is made are a proper charge against the bond in view of its broad provisions.

(3) This claim is for gasoline and oil furnished the drivers owning their trucks, and is presented in the thirteenth cause of action. Arrangements were made by the contractor with the claimants to furnish these supplies to the drivers, charging them to the contractor. The drivers purchased from the contractor coupon books calling for the supplies, and these coupons were redeemed by the contractor. These supplies were used and employed on the contract. No objection is made to the allowance for similar supplies furnished for trucks owned by the contractor. The claim was properly allowed against the bond, for reasons already given as to the claims for repairs and provisions.

There are, however, objections to certain items in two of these accounts, which we think are well taken: (1) A charge of $58 for a new radiator for one of the drivers' trucks; (2) three charges for $262.70, $300, and $100, in-

cluded in the sixth cause of action. The radiator was not consumed upon the job but represented the capital invested by the driver. The other three items represent part of the purchase price of new trucks sold to drivers and payment guaranteed by the contractor. We are unable to perceive upon what theory these items are properly chargeable to the bond. They represented the personal obligations of the purchasers of the trucks, and, while the amounts were charged by the contractor to the drivers and deducted from their contracts, the subject of such charges was not consumed on the project but after completion thereof remained the property of the drivers for use elsewhere. The terms "used or employed on said contract" must be understood as including only such articles and supplies as are consumed in the performance of the work. It is perfectly obvious that the price of an automobile, though used and employed on the contract, is not under the protection of the bond.

Objections are made to instruction No. 3 given by the court, but as this related to the defense of a release of defendant by extensions of time, which we have held unavailable, this assignment need not be discussed.

It follows that the judgment of the district court is right, except as to the first cause of action, which is reduced by $55 and interest, $5.35, total $60.35; and the sixth cause of action which is subject to a reduction of $662.70 and interest, which leaves nothing due thereon from the surety. It is therefore ordered that the judgment on the first cause of action be reduced and affirmed to the extent of $1,445.51; that the sixth cause of action be reversed and dismissed; and that in all other respects the judgment is affirmed.

AFFIRMED IN PART, AND REVERSED IN PART.

Note— See Highways, 29 C. J., 611 n. 37, 612 n. 51, 53, 612 n. 67, 613 n. 73, 75—Principal and Surety, 32 Cyc. 191 n. 91; 43 L. R. A. n. s. 65; 44 A. L. R. 383; 46 A. L. R. 511; 22 R. C. L. 632; 3 R. C. L. Supp. 1273; 4 R. C. L. Supp. 1473; 7 R. C. L. Supp. 751.