QUALITY EQUIPMENT COMPANY, A NEBRASKA CORPORATION,
APPELLEE, V. TRANSAMERICA INSURANCE COMPANY, A
CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF,
APPELLANT, ALLSTATE PAVING, INC., DEFENDANT AND
THIRD-PARTY PLAINTIFF, INTERVENOR-APPELLANT, AND BARAJAS
ENTERPRISES, INC., AND TYLER CONSTRUCTION COMPANY,
THIRD-PARTY DEFENDANTS, APPELLEES.

502 N.W.2d 488

Filed July 16, 1993.   No. S-91-424.

Joseph E. Jones and Dwight E. Steiner, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., and Thomas J. Rooney, of Rooney & Neilson, Ltd., for appellant and intervenor-appellant.

Donald J. Buresh and Robert J. Becker, of Stalnaker, Becker, Buresh, Gleason & Farnham, P.C., for appellee Quality Equipment Co.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

SHANAHAN, J.

Quality Equipment Company sued Transamerica Insurance Company on public contractor's bond issued by Transamerica for the contractor, Allstate Paving, Inc., pursuant to Neb. Rev. Stat. § 52-118 (Reissue 1988) for material and equipment furnished to a subcontractor on two highway projects for the State of Nebraska. Section 52-118(1) states:

It shall be the duty of the State of Nebraska, or any department or agency thereof . . . empowered by law to enter into a contract for the erecting and furnishing, or the repairing of any public building, bridge, highway, or other

public structure or improvement . . . to which the general provisions of the mechanics' lien laws do not apply . . . to take from the person, persons, firm, or corporation to whom the contract is awarded a bond, in a sum not less than the contract price, with a corporate surety company, conditioned for the payment of all laborers and mechanics for labor that shall be performed and for the payment for material and equipment rental which is actually used or rented in the erecting, furnishing, or repairing of the public structure or improvement or in performing the contract.

Transamerica's bonds expressly secured payment by Allstate and Transamerica "for the payment of material and equipment rental which is actually used or rented in performing the contract."

The district court for Douglas County granted summary judgment to Quality, and Transamerica and Allstate appeal.

## FACTUAL BACKGROUND

In 1989, the Nebraska Department of Roads entered into two contracts with Allstate for road repairs to two sections of Interstate 80. In accordance with § 52-118, Transamerica, as surety, issued two bonds for its principal, Allstate, to secure payment for materials in the highway projects.

Barajas Enterprises, Inc., and Tyler Construction Company formed a joint venture and subcontracted with Allstate to perform certain sawing and sealing work on the I-80 projects. Quality supplied the Barajas-Tyler joint venture with material, including nine sets of diamond saw blades and rental equipment for both highway projects. Another supplier, Con-Spec, delivered the same types of material to the joint venture, including six sets of diamond saw blades and equipment. Before completing its work, the Barajas-Tyler venture abandoned the projects.

Quality subsequently sued Transamerica on the bonds, seeking $35,541.90 for materials and rental equipment. Transamerica answered and then tendered the defense of the action to Allstate, which intervened in the action, undertook the defense, and impleaded Barajas and Tyler as third-party

defendants. In its answer, Transamerica asserted that 15 sets of saw blades greatly exceeded the number required for work by the joint venture and that Quality's price was unreasonable. Transamerica also claimed that certain rental equipment was not "actually used" in the projects because the equipment sat idle after the joint venture abandoned its work.

Quality moved for summary judgment against Transamerica and submitted the affidavit of Gabriel Barajas, the president of Barajas Enterprises. In his affidavit, Barajas stated, "All of the materials referred to in Exhibits 'B' through 'Q' and all the rental equipment referred to in Exhibits 'S' through 'W' were delivered to the construction site and were used by the joint venture in its performance of the work under the subcontracts referred to above." Exhibits B through Q included invoices showing that Quality delivered at least nine clipper diamond blades to Barajas. Quality also submitted the affidavit of its salesman, Michael Nowak, who stated that he delivered all the materials in question to Barajas at the construction site and that when the deliveries were made, the joint venture was working at the construction site. Finally, Quality submitted the affidavit of its president, Tyler Bouman, who stated that the charges listed on the attached invoices were "fair and reasonable and were below the manufacturer's suggested retail price."

Transamerica submitted several affidavits in opposition to Quality's summary judgment motion. In his affidavit, Allstate's project superintendent, Terry Kraemer, stated that a second supplier, Con-Spec, delivered six sets of blades to Barajas and that according to the estimates of Quality's own sales representative, the joint venture would have used no more than eight sets of blades to complete the total cutting of 75,000 lineal feet in the project. Kraemer himself estimated that only six sets of blades would have been used for the cutting and that the difference in the number of blades, that is, the number allegedly delivered by Quality vis-a-vis the number required for work in the project, "is too far off to be the result of happenstance. The unaccounted for sets of blades could not have been used for the I-80 projects." Additionally, both Kraemer and E.J. Cruikshank, who in 1989 worked for a company which sold diamond saw blades in California, stated

that the price charged by Quality for the blades was "high and unreasonable."

After considering the affidavits and exhibits submitted by the parties, the trial court concluded that the materials in question had been supplied to and accepted by the joint venture and that, therefore, Quality was entitled to the contract price for those materials.

## ASSIGNMENTS OF ERROR

Transamerica and Allstate contend that the district court erred in (1) misconstruing § 52-118 by ruling that delivery of materials to the construction site and the subcontractor's acceptance conclusively established liability under the general contractor's bond, regardless of whether the materials were actually used in work on the highway projects; (2) entering summary judgment for Quality when the evidence indicated that not all the materials supplied at the project could have been used in the project and the equipment rental charges extended beyond the point at which the subcontractor abandoned the project; and (3) refusing to allow Transamerica to amend its answer and assert an affirmative defense of estoppel.

## STANDARD OF REVIEW

A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

*Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 162-63, 425 N.W.2d 872, 875 (1988). Accord, *Shelter Ins. Co. v. Frohlich, ante* p. 111, 498 N.W.2d 74 (1993); *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993); *Dowis v. Continental Elev. Co.*, 241 Neb. 207, 486 N.W.2d 916 (1992).

"On a motion for summary judgment, the question is not

how a factual issue is to be decided, but whether any real issue of material fact exists." *Newman v. Hinky Dinky*, 229 Neb. 382, 385, 427 N.W.2d 50, 53 (1988). Accord, *Dowis v. Continental Elev. Co., supra*; *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992); *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992).

"The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted." *Wilson v. F & H Constr. Co.*, 229 Neb. 815, 819, 428 N.W.2d 914, 917 (1988). Accord, *Dowis v. Continental Elev. Co., supra*; *Anderson v. Service Merchandise Co., supra*; *Murphy v. Spelts-Schultz Lumber Co., supra*.

"After the movant for a summary judgment has shown facts entitling the movant to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party." *Wilson v. F & H Constr. Co.*, 229 Neb. at 819, 428 N.W.2d at 917. Accord, *Dowis v. Continental Elev. Co., supra*; *Murphy v. Spelts-Schultz Lumber Co., supra*; *Wiles v. Metzger*, 238 Neb. 943, 473 N.W.2d 113 (1991).

"Interpreting a statute presents a question of law for judicial determination." *Sports Courts of Omaha v. Meginnis*, 242 Neb. 768, 770, 497 N.W.2d 38, 40 (1993). "When statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain the statute's meaning so that, in the absence of a statutory indication to the contrary, words in a statute will be given their ordinary meaning." *State v. Crowdell*, 234 Neb. 469, 473-74, 451 N.W.2d 695, 699 (1990). Accord, *Sports Courts of Omaha v. Meginnis, supra*; *Maack v. School Dist. of Lincoln*, 241 Neb. 847, 491 N.W.2d 341 (1992).

## WAS SUMMARY JUDGMENT PROPER?

Transamerica's bonds were issued in accordance with § 52-118, which, in pertinent part, provides that a public works bond shall apply to "the payment for material and equipment

rental which is actually used or rented in the erecting, furnishing, or repairing of the public structure or improvement or in performing the contract."

The district court held that because "[i]t is uncontroverted that the plaintiff supplied material to a specific job site for which the defendant supplied a bond [and the] material was duly accepted," Quality was entitled to judgment as a matter of law. Transamerica and Allstate argue that under § 52-118, a contractor's bond secures only those materials which are actually used or rented for the performance of the contract and that the court erred in finding that all the materials were actually used in performing the contract. Quality responds that § 52-118 establishes a presumption that materials that are delivered to the jobsite are actually used in performance of the contract.

Although this court has held that a predecessor of § 52-118, Rev. Stat. § 3840 (1913), as a remedial statute, should be "liberally construed to effectuate [its] purpose," *Iddings Co. v. Lincoln Construction Co.*, 104 Neb. 124, 127, 175 N.W. 643, 644 (1920), both the plain language of the statute and Nebraska case law support Transamerica and Allstate's position. As early as 1915, this court held that "[l]abor and materials *that enter into the structure or are consumed in or about the work* may be recovered for" (emphasis supplied) in an action on a common-law contractor's bond, but that payment

"for tools and appliances which are the property of the contractors and may be used from time to time in other works and upon other contracts, and which are not consumed in the work or which do not go as a part of the building or improvement and necessarily enter therein"

was not recoverable. *Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co.*, 98 Neb. 27, 35, 151 N.W. 942, 945 (1915) (quoting *Ninneman v. City of Lewiston*, 23 Idaho 169, 129 P. 1073 (1912). Construing Comp. Stat. § 52-118 (1929), which was a statutory predecessor of § 52-118 (Reissue 1988) and which contained the same pertinent wording as § 52-118 in the present case, this court, in *Kiewit Sons' Co. v. National Casualty Co.*, 142 Neb. 835, 8 N.W.2d 192 (1943), concluded that the key issue in determining whether payment was due under a statutory

public works bond is whether the equipment or material was actually used in construction and repair of a public highway project covered by a contractor's bond. Similarly, in *West v. Detroit Fidelity & Surety Co.*, 118 Neb. 544, 554, 225 N.W. 673, 677 (1929), this court held that "only such 'supplies' *as enter into the performance of the contract* may be charged to the surety." (Emphasis supplied.) Thus, under § 52-118, a contractor's bond is security only for material and rental equipment actually used in the performance of a contract described in § 52-118.

We realize that the Nebraska Construction Lien Act, Neb. Rev. Stat. §§ 52-125 to 52-159 (Reissue 1988), in § 52-134(2) of the act, provides: "The delivery of materials to the site of the improvement . . . creates a presumption that they were used in the course of construction or were incorporated into the improvement." However, we are examining quite a different statute, § 52-118, which by its unambiguous language governs a surety bond for a public highway contractor. Section 52-118 does not contain an expression of a statutory presumption as does § 52-134(2). Thus, the presumption extended under § 52-134(2) has been withheld from § 52-118. "[T]he Lord gave, and the Lord hath taken away." *Job* 1:21 (King James). So has the Legislature concerning presumed use of materials in a construction project.

Thus, in the present case, summary judgment was proper only if there was no genuine issue of material fact as to whether the materials and equipment that Quality delivered were actually used by the Barajas-Tyler joint venture on the I-80 projects. Quality maintains that Gabriel Barajas' affidavit conclusively established that all materials delivered by Quality were actually used on the projects. However, Transamerica and Allstate contend that the joint venture could not possibly have used all the materials supplied for the projects. The evidence presented to the district court establishes that both Con-Spec and Quality delivered sets of blades to the Barajas-Tyler venture at the project sites. Moreover, evidence indicates that the joint venture's work on the projects may have consumed between six and eight sets of blades. Con-Spec delivered 6 sets of blades, while Quality delivered 9 sets, for a total of 15 sets of

blades delivered to the joint venture on the projects. Whose six or eight sets of blades were used in the projects? If Con-Spec's six sets were used in what was a six-set project, then none of Quality's blades were used. Also, if six sets of Con-Spec's blades were used in an eight-set project, then only two sets of Quality's blades were used on the projects. Consequently, in that posture of Transamerica and Allstate's evidence, although Quality may have delivered nine sets of blades, either none of Quality's blades or fewer than the number claimed by Quality were used in the projects. On the other hand, as reflected by Quality's evidence, all the blades supplied by Quality may have been used in the highway projects. Arithmetic, based on deliveries and estimated use of the blades, again raises the question: Whose blades were used in the highway projects? Quality points out that parts of Kraemer's affidavit, which raises the question, are not based on Kraemer's personal knowledge as required by Neb. Rev. Stat. § 25-1334 (Reissue 1989) (affidavits for a summary judgment shall be made on personal knowledge, shall set forth facts admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters expressed in an affidavit). Kraemer's estimation of blade life in relation to the highway projects and costs is based on his knowledge and experience as the project superintendent for Allstate. Under the circumstances, Kraemer's affidavit complies with § 25-1334. Whether all the diamond saw blades supplied by Quality were used on the I-80 projects is a disputed issue of material fact; hence, summary judgment was inappropriate under the circumstances of this case. Consequently, we reverse the summary judgment.

## AMENDMENT OF PLEADINGS

Transamerica and Allstate also contend that the district court erred in refusing to allow them to amend their answer at the hearing on Quality's summary judgment motion. The district court refused to allow Transamerica and Allstate's proposed amendment because the motion was untimely. Since we have reversed the summary judgment and because Transamerica and Allstate will be able to file a timely motion to amend their answer in any further proceedings, we find it unnecessary to

consider Transamerica and Allstate's assignment of error regarding the district court's denial of Transamerica and Allstate's motion to amend their answer.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.