JAMES P. HEALY, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF
SHERRY L. HEALY, AND JAMES P. HEALY, INDIVIDUALLY,
APPELLANT, V. ROBERT M. LANGDON, M.D., APPELLEE.

511 N.W.2d 498

Filed January 28, 1994.    No. S-91-1206.

Jeffrey A. Silver for appellant.

Joseph F. Bataillon, of Sodoro, Daly & Sodoro, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

WHITE, J.

Appellant, James P. Healy, filed a wrongful death action against appellee, Dr. Robert M. Langdon. James Healy alleged that Dr. Langdon had negligently failed to warn the decedent, Sherry L. Healy, of the potential side effects of her chemotherapy regimen. The district court granted Dr. Langdon's motion for summary judgment, finding that the action was barred by the statute of limitations. We reverse the decision of the district court and remand the cause for further proceedings.

In September 1987, after a diagnosis of cancer and the surgical removal of a tumor, Sherry Healy began chemotherapy under the care of Dr. Langdon. The chemotherapy was to include a scheduled nine doses of the drug bleomycin.

On November 25, Sherry Healy received the seventh dose. On December 4, when she was to receive the eighth dose, Sherry Healy told Dr. Langdon that she was experiencing a tight chest and shortness of breath. Dr. Langdon suspected that she might be suffering from an inflammation of the lungs caused by the bleomycin. Dr. Langdon withheld the eighth dose of bleomycin and began monitoring Sherry Healy's lung condition.

Despite Dr. Langdon's efforts, Sherry Healy's lung condition worsened. On December 29, her right lung collapsed and she was admitted to the hospital.

Sherry Healy died on January 22, 1988. According to Dr. Langdon, the autopsy revealed no sign of active cancer, but did reveal scarring of the lung tissue. In Dr. Langdon's opinion, Sherry Healy's death was caused by "bleomycin lung."

James Healy, Sherry Healy's husband, filed this wrongful death action pursuant to Neb. Rev. Stat. §§ 30-809 and 30-810 (Reissue 1989) on January 19, 1990. Dr. Langdon filed an answer denying any negligence and alleging that the action was time-barred. Dr. Langdon then moved for summary judgment.

Dr. Langdon contended that the action was barred by the professional malpractice statute of limitations found in the

Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. § 44-2828 (Reissue 1988). James Healy contended that the action was allowed by the wrongful death statute of limitations, § 30-810. Although both statutes provide for a 2-year limitation period, the professional malpractice limitation period begins to run at the time of the malpractice, while the wrongful death limitation period begins to run at the date of death. §§ 30-810 and 44-2828.

The district court found that the action was governed by the professional malpractice statute of limitations. The district court also found that the action did not fall within the continuing treatment exception to the professional malpractice statute of limitations. The district court determined that the statute of limitations began to run on the date of Sherry Healy's final bleomycin treatment, November 25, 1987. The district court thus concluded that the action was time-barred.

James Healy appeals from the district court's order granting summary judgment to Dr. Langdon. He asserts that the district court erred (1) in failing to apply the wrongful death statute of limitations and (2) in failing to apply the continuing treatment exception to the professional malpractice statute of limitations.

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Plambeck v. Union Pacific RR. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993); *VonSeggern v. Willman*, 244 Neb. 565, 508 N.W.2d 261 (1993).

" 'On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists.' " *Quality Equip. Co. v. Transamerica Ins. Co.*, 243 Neb. 786, 789-90, 502 N.W.2d 488, 491 (1993). Accord *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993). The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Transamerica Commercial Fin. Corp. v. Rochford*, 244 Neb.

802, 509 N.W.2d 214 (1993); *VonSeggern, supra.* After a movant for summary judgment has shown facts entitling the movant to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. *Transamerica Commercial Fin. Corp., supra*; *VonSeggern, supra.*

In reviewing an order granting a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from the evidence. *VonSeggern, supra*; *Zwingman v. Kallhoff*, 244 Neb. 514, 507 N.W.2d 894 (1993).

Dr. Langdon argues that he is entitled to summary judgment because the present action is barred by the professional malpractice statute of limitations. We disagree.

In the professional malpractice context, Nebraska generally follows the occurrence rule. *Tiwald v. Dewey*, 221 Neb. 547, 378 N.W.2d 671 (1985). That is, a professional malpractice cause of action accrues and the statute of limitations begins to run when the allegedly wrongful act or omission occurs. § 44-2828. See, also, Neb. Rev. Stat. § 25-208 (Reissue 1989). In 1941, however, we carved out an exception to the occurrence rule: the continuing treatment exception. See *Williams v. Elias*, 140 Neb. 656, 1 N.W.2d 121 (1941). See, also, *Tiwald, supra*; *Smith v. Dewey*, 214 Neb. 605, 335 N.W.2d 530 (1983). Under the continuing treatment exception, the statute of limitations does not begin to run "until the act complained of, *and any resulting subsequent treatment therefor,* is completed." (Emphasis supplied.) *Smith*, 214 Neb. at 609-10, 335 N.W.2d at 533.

This court recognized the continuing treatment exception because the exception aided both patients and physicians:

> [I]t is just to the physician and surgeon that he may not be harassed by premature litigation instituted in order to save the right of the patient in the event there should be substantial malpractice. The physician and surgeon must have all reasonable time and opportunity to correct the evils which made the observation and treatment necessary

and to correct the ordinary and usual mistakes incident to even skilled surgery. The [continuing treatment exception] is conducive to that mutual confidence which is highly essential in the relation between surgeon and patient. The treatment and employment should be considered as a whole, and if there occurred therein malpractice, the statute of limitations should begin to run when the treatment ceased.

*Williams*, 140 Neb. at 662-63, 1 N.W.2d at 124. We have continued to recognize both the exception and the benefits it provides. See *Smith, supra*.

More recently, this court has merged the continuing treatment exception into the occurrence rule and has enunciated the following general rule: In medical malpractice cases, the period of limitations or repose begins to run when the treatment rendered after and relating to the allegedly wrongful act or omission is completed. *Ourada v. Cochran*, 234 Neb. 63, 449 N.W.2d 211 (1989); *Barry v. Bohi*, 221 Neb. 651, 380 N.W.2d 249 (1986).

This case presents us with our first opportunity to apply the above-stated general rule to a failure-to-warn claim. We are guided, however, by two earlier failure-to-warn cases in which we considered the continuing treatment exception: *Smith, supra*, and *Tiwald, supra*. The facts of these two cases are strikingly similar. Both patients sought treatment for allergies, both patients were not warned that the treatments could lead to cancer, and both patients later developed cancer, allegedly as a result of the unwarned treatments. See, *Tiwald, supra*; *Smith, supra*.

In *Smith*, the patient received a series of allergy treatments which included injecting x-ray radiation particles into the patient's chest. The final such treatment occurred in 1970. The patient was subsequently examined by the physician in 1972. The patient filed suit in 1981, and the physician demurred. We sustained the demurrer because the petition failed to allege that the 1972 examination was related to the prior treatment. However, we stated that if the 1972 examination "was a followup to or a continuation of" the x-ray treatments, then the examination would constitute continuing treatment and the

patient's claim would not be barred by the 10-year statute of repose. *Smith*, 214 Neb. at 611, 335 N.W.2d at 534.

In *Tiwald*, the patient received a series of allergy treatments which included exposing the patient's chest, neck, and head to x rays. The final such treatment occurred in 1969. The patient, still under the care of the same physician, subsequently received drug and extract therapies for the allergies. The patient was last examined by the physician in 1974. The patient filed suit in 1983. The district court granted the physician's motion for summary judgment. We affirmed, finding that the drug and extract therapies did not constitute continuing treatment and that the patient's claim was barred by the statute of repose.

*Smith* and *Tiwald* both involved patients who allegedly were not warned about the dangers of the medical treatments they received. The crucial difference between these two cases is the nature of the treatment which followed the unwarned treatments. If the subsequent treatment *related to the unwarned treatment*, then the statute of limitations did not begin to run until the completion of the subsequent treatment. See *Smith, supra*. However, if the subsequent treatment *related to the original malady*, then the statute of limitations began to run at the completion of the unwarned treatment. See *Tiwald, supra*.

In the present case, Dr. Langdon allegedly failed to warn Sherry Healy that the chemotherapy could cause death. When she developed complications, a lung condition, Dr. Langdon discontinued the chemotherapy but continued to treat her for the complications. The treatment for these complications was not related to the original malady, but, rather, was related to the unwarned treatment. In the language of our general rule, the treatment for Sherry Healy's complications was treatment after and relating to the allegedly wrongful act or omission. Therefore, the professional malpractice statute of limitations did not begin to run until the treatment for Sherry Healy's complications concluded.

The record does not definitively establish the date on which the treatment for Sherry Healy's complications concluded. The record reflects that Dr. Langdon began monitoring Sherry Healy's lung condition on December 4, 1987. The record also

reflects that, in Dr. Langdon's opinion, Sherry Healy's lung condition caused her death. James Healy alleged in his petition that Dr. Langdon treated Sherry Healy until January 22, 1988, the date of her death. Dr. Langdon generally denied every allegation in the petition. Other than this general denial, Dr. Langdon has offered no evidence as to when his treatment concluded.

The petition alleges and the evidence suggests that Dr. Langdon continued treating Sherry Healy's complications until the date of her death. The petition was filed within 2 years of the date of death. We are unable to say, as a matter of law, that the petition was untimely filed. A genuine issue of material fact exists as to the date on which Dr. Langdon's treatment of Sherry Healy's complications concluded. Therefore, summary judgment was improper. Based on the record currently before us, we hold that this action is not barred by the professional malpractice statute of limitations.

In view of our holding on the statute of limitations issue, it is clear that the case may go forward under either the professional malpractice or wrongful death statute of limitations. It is unnecessary to decide which of the two statutes of limitations should control when the two conflict. But see *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993).

The trial court disposed of the case on the basis of the statute of limitations and never reached the additional issues raised by Dr. Langdon's summary judgment motion. However, a proper result will not be reversed merely because it was reached for the wrong reasons. *Logan Ranch v. Farm Credit Bank*, 238 Neb. 814, 472 N.W.2d 704 (1991) (affirming, on different grounds, a district court's order granting summary judgment); *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985) (affirming, on different grounds, a district court's order granting summary judgment). The parties presented the trial court with evidence regarding a standard of care and a possible breach of that standard. We now consider whether this evidence is sufficient to justify the district court's order granting summary judgment.

Dr. Langdon argues that he is entitled to summary judgment

because James Healy has failed to raise a genuine issue of material fact regarding the standard of care and the breach of that standard. We disagree.

In support of his motion for summary judgment, Dr. Langdon offered his own affidavit which states that he has reviewed the case, that he is familiar with the standard of care for physicians treating conditions similar to Sherry Healy's, and that in his opinion he did not violate the standard of care. Dr. Langdon also offered several excerpts from his deposition testimony. In one excerpt, Dr. Langdon stated that he would have deviated from the standard of care if he had failed to inform Sherry Healy that death was a potential side effect of the chemotherapy. In a second excerpt, Dr. Langdon stated that he told both Sherry and James Healy that death was a possible side effect of the chemotherapy. In a third excerpt, Dr. Langdon stated that he spoke to Sherry Healy immediately before her final chemotherapy treatment and told her that she could have a bad reaction to the drug and die. According to Dr. Langdon, James Healy was not present during this conversation.

The evidence presented by Dr. Langdon establishes a prima facie showing that Dr. Langdon did not fail to warn Sherry Healy of the potential side effects of bleomycin. See, *Marshall v. Radiology Assoc.*, 225 Neb. 75, 402 N.W.2d 855 (1987) (where a doctor presents an affidavit stating that the doctor met the applicable standard of care, the doctor establishes a prima facie case of lack of negligence for purposes of summary judgment); *Hanzlik v. Paustian*, 216 Neb. 575, 344 N.W.2d 649 (1984). The burden now shifts to James Healy, as the party opposing the motion, to rebut this evidence and establish the existence of a genuine issue of material fact.

In opposition to the summary judgment motion, James Healy presented evidence of the standard of care and of the breach of that standard. To establish the standard of care, James Healy offered Dr. Langdon's deposition testimony, noted above, that it would have been a deviation from the standard if the physician had failed to inform Sherry Healy that death was a potential side effect of the chemotherapy. To establish a breach of that standard, James Healy offered his own affidavit, which states that he was present at all times when

Dr. Langdon discussed the potential side effects of the chemotherapy. The affidavit further states that "at no time prior to or during the course of the chemotherapy treatment" did Dr. Langdon inform Sherry Healy that death was a potential side effect of the chemotherapy.

The record also contains a form entitled "Consent to Chemotherapy." The form is signed by Sherry Healy and is dated September 22, 1987. The form provides, in relevant part, that "[t]he purpose of the treatment, its side effects and possible complications have been explained to me and are understood by me. Specific side effects and complications which might occur include . . . ." The form goes on to list 29 conditions, some of which have checkmarks next to them and others which do not have checkmarks. We note that although "Scarring (fibrosis) of the lung" is listed and checked, death is not on the list.

For purposes of summary judgment, the affidavit presented by James Healy raises the question that Sherry Healy herself was never warned that death could result from the chemotherapy. See *Atkins v. Tri-Cities Steel*, 166 Ga. App. 349, 304 S.E.2d 409 (1983) (where tenant's affidavit stated that landlords had failed to warn her to stay out of a certain building, affidavit raised inference that landlords had similarly failed to warn tenant's husband). The consent form raises a similar inference. These inferences directly conflict with the evidence presented by Dr. Langdon. Such a conflict signals the presence of a genuine issue of material fact; the relative credibility of James Healy and Dr. Langdon is a question which can only be resolved by a jury. We therefore hold that summary judgment was improper.

We conclude that this wrongful death action is not barred by the professional malpractice statute of limitations and that a genuine issue of material fact exists as to whether a duty was breached. We reverse the order of the district court and remand the cause for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

GRANT, J., Retired, concurs.