Gordon D. McCAMLEY, Appellant,

v.

Bessie Mae MOSS, Appellee.

No. 78–1122.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1978.

Decided Nov. 21, 1978.

---

David S. Houghton of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, Omaha, Neb., for appellant.

William R. Johnson of Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Gordon D. McCamley, appellant, brought this action seeking recovery of substantial damages for bodily injuries allegedly sustained on August 30, 1974, in an automobile collision with a vehicle driven by appellee Bessie Mae Moss. In defense of the action, Moss asserted that in November 1974, McCamley executed a document entitled "Release of All Claims-Final Settlement" which released her from all damage claims arising from that accident. On Moss' motion for summary judgment, the district court determined that the release and settlement bound McCamley, and it dismissed the action. McCamley brings this timely appeal and contends that such release is not binding because of the parties' mutual mistake relating to the extent of the injuries McCamley had sustained in the accident. Federal court jurisdiction rests upon diversity of citizenship and the requisite amount in controversy.

On the record in this case, it cannot be said that no genuine issue of fact exists

as to whether the parties intended the release to cover the injury which McCamley presently asserts he sustained in the automobile accident. Accordingly, we reverse and remand for further proceedings.

## I.

On August 30, 1974, a car driven by Bessie Moss struck and damaged the automobile of Gordon McCamley at an intersection in Omaha, Nebraska. Moss subsequently pled guilty to a traffic citation for following another vehicle too closely. McCamley, then a senior medical student at the University of Nebraska Medical Center, sustained some apparently minor back and neck injuries as a result of the accident. The lower back and neck pains he suffered soon subsided. X-rays failed to indicate any fractures.

McCamley sent Moss' insurer a written estimate of accident-related damages, calculating the costs for car repair, out-of-pocket expenses, and medical treatment as totalling $618.39. The written estimate included the following statement:

The above does *not* include frame and hidden damage on the car, or any compensation for pain, lost time, etc.

McCamley later informed Douglas Casper, an insurance adjuster representing Moss' insurer, that a tire had also been damaged, bringing the total estimated expenses to $698.39. The insurance company ultimately tendered McCamley $700, for which he and his wife executed a release that discharged Bessie Moss

* * * from any and all claims * * arising out of or resulting in any manner from injuries, losses and damages, (known and unknown, developed or unde-

veloped), sustained as a result of [the] accident * * *.

The undersigned hereby [accepts] said sum as a compromise and final settlement of all claims * * *.

Subsequently, McCamley experienced increasing pain and discomfort to his neck. McCamley now contends that he sustained a compression fracture to his cervical vertebrae, which has produced his present, continuing disability.[1]

In district court, McCamley sought to invalidate the release and settlement on grounds of mutual mistake. He argued that the parties did not contemplate that the $700 consideration for the release would include the injury for which he seeks recovery in the present suit. However, in opposition to McCamley's claim, Moss filed an affidavit of Douglas Casper, the insurance adjuster, in which the witness stated that the release of claims reflected the intent of the adjuster that the release was to bar "all future claims, both for property damage and physical injury and pain and suffering both known and unknown, developed and undeveloped, which might occur or which had occurred at the time of the execution of [the release]."

The district court rejected the claim that a mutual mistake between McCamley and Moss' insurer had occurred because the language of the release and the adjuster's affidavit supported the conclusion that the insurer contracted with respect to possible unknown injuries. The court observed that McCamley had made a unilateral mistake and ruled that the release could not be avoided as a matter of law. Accordingly, the court granted a summary judgment in favor of Moss.

1. The medical cause of McCamley's present neck condition appears to be in dispute. On January 6, 1976, sixteen months after the accident, a University of Nebraska Medical Center radiologist read the x-rays as showing "a slight narrowing of the C–5–6 intervertebral disc level, and the changes appeared to be on a degenerative basis." However, the Radiology Department of the Naval Regional Medical Center, Oakland, California, took additional x-rays and read the x-rays as showing a possible compression fracture of C–6.

In his deposition McCamley commented that the Navy radiologist had explained

* * * that it appeared there was a compression fracture a couple of years ago, possibly, and probably, * * * in the accident. And that the vertebral spine had shrunken in size since then, in addition to the other degenerative changes that were present, and the cervical straightening which had been present since the accident.

**394**

## II.

■ The crucial question on a motion for summary judgment is whether there exists a "genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The alleged factual dispute in this appeal concerns whether McCamley's late-diagnosed injury and disability is reached by the release. The court must view the facts most favorably to McCamley, the party opposing the motion, and give him the benefit of all reasonable inferences to be drawn from those facts. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 153–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *New England Mut. Life Ins. Co. v. Null,* 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment is an extreme remedy which should be granted only when the movant so clearly establishes his right to judgment that no room for controversy remains and when the other party is not entitled to recover under any possible circumstances. *Goodman v. Parwatikar,* 570 F.2d 801, 803 (8th Cir. 1978); *Ozark Milling Company, Inc. v. Allied Mills, Inc.,* 480 F.2d 1014, 1015 (8th Cir. 1973) (*per curiam*).

■ This case, grounded on diversity of citizenship, is governed by Nebraska law. Under Nebraska law a settlement agreement which purports to release any and all claims for accident-related damages may be set aside on grounds of mutual mistake where there are injuries of a serious character wholly unknown to the parties, which were not taken into consideration when the release was executed. *Collins v. Hughes & Riddle,* 134 Neb. 380, 389, 278 N.W. 888, 893 (1938). Language in an insurer-prepared release, such as the one in this case, which indicates that the settlement covers all injuries, "known and unknown," does not in and of itself conclusively demonstrate the parties' intent to settle claims for unknown injuries. *See Simpson v. Omaha & C. B. St. Ry. Co.,* 107 Neb. 779, 186 N.W. 1001 (1922). In *Simpson,* the Nebraska Supreme Court explained that:

> Where one who has sustained personal injuries, and with his attention directed to the known injuries, which are trivial in their nature, contracts for the settlement of his damages with reference thereto, in ignorance of other and more serious injuries, both parties at the time believing that the known injuries are all the injuries sustained, then there is a mutual mistake, and the release, although couched in general terms, should be held not to be a bar to an action for the more serious and unknown injuries. [186 N.W. at 1003.]

That court further discussed the rule, as follows:

> [T]he true rule is that the mistake must relate to either a present or past fact or facts that are material to the contract of settlement, and not to an opinion as to future conditions as the result of present known facts. A mistake as to the future development of a known injury is a matter of opinion, and is not one of fact, and is not such a mistake as will avoid a release; but, where the mistake is as to the extent of the injury due to unknown conditions or relates to injuries that were wholly unknown, then the release may be avoided, unless it further appears that the parties were contracting with respect to possible unknown injuries, and the releasor intended to relinquish all claims, whether known or unknown. [*Simpson,* 186 N.W. at 1003; *LaRosa v. Union Pac. R. Co.,* 142 Neb. 290, 299, 5 N.W.2d 891, 895 (1942).]

■ Under Nebraska law the parties are deemed mutually mistaken as to the existence of more serious injuries, if both believed that the "known injuries [were] all the injuries sustained." *Simpson,* 186 N.W. at 1003. McCamley, to avoid the release in this case, must produce evidence to establish that the parties were not aware of any serious injuries caused by the accident and contracted for a settlement only with respect to the known minor injuries and damage to property.

■ In his damage estimate to the insurance company, McCamley indicated that "[t]he X rays showed no fractures—just 'cervical straightening with strain and muscle spasm.'" Any injury to the cervical vertebrae, for which McCamley now seeks

recovery, was not disclosed by the x-rays taken shortly after the accident. In addition, in the written estimate McCamley explicitly excluded "compensation for pain, * * * etc." This evidence, together with the fact that only $700 was paid in consideration for the release, suggests that the parties may have been contracting solely for the settlement of damages to the automobile and for medical expenses stemming from the minor back and neck injuries. Furthermore, Moss did not establish, within the language of *Simpson,* that "the releasor [McCamley] intended to relinquish all claims, whether known or unknown." Although the release form and the insurance adjuster's affidavit support the conclusion that the *insurer* may have contracted with respect to unknown injuries, that is not dispositive of McCamley's intent to "relinquish all claims, whether known or unknown." The record in this case does not definitively establish, under the *Simpson* standard, that both parties intended the release to cover possible unknown injuries arising from the accident.

To ultimately succeed in setting aside the release, it also remains for McCamley to demonstrate that his present condition is not the result of the development of an injury known at the execution of the release, but is an injury that was wholly unknown at the release's signing. A mistake as to the future development of a known injury is not such a mistake as will avoid a release. *Simpson, supra.*

The medical evidence concerning the status of McCamley's injury is unclear. *See* note 1 *supra.* The record is incomplete as to whether McCamley's present condition resulted from the development of a known injury to the neck or is due to injuries wholly unknown at the execution of the release. In light of the circumstances surrounding the signing of the release and the uncertain state of the medical evidence, we hold only that the district court should not have granted summary judgment on the present record.

Accordingly, we reverse the summary judgment in this case and remand to the district court for further proceedings. We believe it appropriate to comment that our opinion does not foreclose disposition of the case on legal grounds by way of a dismissal, directed verdict, or judgment n. o. v. after further development of the evidence if that evidence conclusively establishes that appellant's present medical complaint reflects the future development of a known injury. Otherwise, upon the trial of this case, the issues should be submitted to a jury.

VAN OOSTERHOUT, Senior Circuit Judge, dissenting.

I respectfully dissent. I would affirm the summary judgment for defendant largely on the basis of Judge Denny's well reasoned opinion.

The accident occurred on August 20, 1974. Plaintiff's bills submitted to the insurer included one for cervical x-rays, $95.00. Plaintiff was an intelligent senior medical student. The release was not signed until November 1974. There is nothing whatsoever in the record which claims that any fraud or coercion was used to obtain the release. As admitted by the majority, the release is broad and clearly and unambiguously releases all known and unknown claims.

In my view Judge Denny properly applied the Nebraska law to the present record. I would affirm.