TODD A. OLIVER, APPELLANT, V. FELISHA E. CLARK, APPELLEE.

537 N.W.2d 635

Filed October 6, 1995.   No. S-93-1063.

632

Michael M. O'Brien, of Cannon, Goodman, O'Brien & Grant, P.C., for appellant.

Waldine H. Olson and Christopher D. Curzon, of Schmid, Mooney & Frederick, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.
Todd A. Oliver, plaintiff–appellant, brought this action seeking recovery of damages for bodily injuries allegedly sustained on October 7, 1991, in an automobile collision with a vehicle driven by defendant–appellee, Felisha E. Clark. In defense of the action, Clark asserted that on October 25 Oliver received settlement funds and executed a document entitled

"Release of All Claims," which released her from all damage claims arising from that accident. On Clark's motion for summary judgment, the district court determined that the release and settlement bound Oliver, and the action was dismissed with prejudice. Oliver appealed to the Nebraska Court of Appeals, assigning as error that there is a question of fact whether such release is binding because of the parties' alleged mutual mistake relating to the nature and extent of the injuries Oliver had sustained in the accident. In order to regulate the caseloads of the appellate courts, we, on our own motion, removed the matter to this court. On the record in this case, we conclude that a genuine issue of fact exists as to whether the parties intended the release to cover the injury which Oliver presently asserts he sustained in the automobile accident. Accordingly, we reverse, and remand for further proceedings.

## FACTUAL BACKGROUND

On October 7, 1991, a pickup truck driven by Clark collided with an automobile driven by Oliver in the Time Out Chicken parking lot on North 30th Street in Omaha, Nebraska. As a result of the collision, Oliver sustained property damage to his automobile and apparently minor injuries to his neck, which produced initial symptomatology of minor pain and swelling of the neck. On October 8, Oliver sought medical treatment from his private physician. X rays failed to indicate any fracture to Oliver's vertebrae, and he was treated and discharged.

On October 22, 1991, Oliver contacted Clark's insurer, indicating that he had received injuries to his back, neck, and arms. On that date, an agent for the insurer offered Oliver $200 to settle his bodily injury claim. Oliver rejected the offer and demanded $1,000 to settle the claim. On October 23, Oliver again contacted the insurer by telephone. During this conversation, Oliver reported that he had received x rays on October 22 and that nothing was wrong with him other than a twisted neck. After some brief negotiations, the agent for the insurer agreed to pay Oliver $500 plus all medical bills incurred to that date in settlement of Oliver's bodily injury claim. Oliver indicated that this settlement was satisfactory to him and stated that he wanted the entire matter settled by October 25.

On October 25, 1991, a document entitled "Release of All Claims" was executed by Oliver in the presence of an agent of the insurer, which document purported to release Clark "from any and all claims . . . arising from . . . an accident that occurred on or about the 7th day of October 1991 . . . [.] [T]his settlement shall apply to all unknown and unanticipated injuries and damages resulting from said accident . . . as well as to those now disclosed."

In accordance with the release, Oliver was initially paid $500, and he received additional payments of $1,054 on November 20, 1991, and $34 on December 13 in payment of medical bills incurred prior to the signing of the release.

Following the signing of the release, Oliver's condition progressively deteriorated, and he continued to seek medical treatment regarding severe pain in the area of his neck. On December 5, 1991, Oliver visited Immanuel Medical Center where a CT scan was performed, and Oliver was diagnosed with a transverse fracture of the odontoid of the second cervical vertebra. Stabilization surgery was performed at AMI Saint Joseph Hospital (St. Joseph's) on December 19, which was followed by complications and has resulted in alleged permanent injury to Oliver.

## DISTRICT COURT PROCEEDINGS

On February 12, 1993, Oliver filed a petition in the district court for Douglas County, alleging negligence on the part of Clark in regard to the automobile accident and seeking damages for permanent injuries and additional medical expenses incurred by Oliver after the signing of the release. Clark filed an answer denying the allegations in Oliver's petition and asserted that Oliver's execution of the document entitled "Release of All Claims" released her from all damage claims arising from the accident. Oliver's reply alleged that at the time of the signing of the release he was not mentally competent to enter into the settlement agreement. Clark subsequently filed a motion for summary judgment in the district court.

At the hearing on Clark's motion for summary judgment, Oliver sought to invalidate the release and settlement on grounds of mutual mistake. Oliver offered his own affidavit, which was received without objection, and attached to the

affidavit were records from the Douglas County Board of Mental Health and medical records from St. Joseph's and Immanuel. Oliver's affidavit and the attached medical records reveal that he has a long history of mental illness and, in fact, had been committed by the board of mental health to various institutions for mental health treatment on at least four occasions in the 4 years preceding the accident. In addition, the medical records attached to Oliver's affidavit set forth the initial diagnosis of no fractures on October 8, 1991, the diagnosis of the transverse fracture of the odontoid of the second cervical vertebra on December 5, and the resultant stabilization surgery that was performed on December 19. In opposition to Oliver's claim, Clark offered affidavits of Saralyn Serratore and Diana Thompson, claim representatives of Clark's insurer, which set forth the entire contents of the release of claims and the fact that the insurer paid all sums of money the insurer had agreed to pay pursuant to the terms of the settlement agreement. In addition, Serratore's affidavit revealed that Oliver informed her on November 20 that he was suffering from a psychotic condition known as paranoid schizophrenia.

The district court rejected the claim that a mutual mistake between Oliver and Clark's insurer had occurred and granted summary judgment in favor of Clark, dismissing Oliver's petition with prejudice.

## SCOPE OF REVIEW

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. After a movant for summary judgment has shown facts entitling the movant to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. *Wagner v. Pope*, 247 Neb. 951, 531 N.W.2d 234 (1995).

In reviewing an order granting a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from the evidence. *Medley v. Davis*, 247 Neb. 611, 529 N.W.2d 58 (1995).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Krohn v. Gardner, ante* p. 210, 533 N.W.2d 95 (1995).

## ANALYSIS

The crucial question on a motion for summary judgment is whether there exists a "genuine issue as to any material fact." See Neb. Rev. Stat. § 25-1332 (Reissue 1989). The alleged factual dispute in this appeal concerns whether Oliver's late-diagnosed injury and asserted disability are reached by the release. On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Grover, Inc. v. Papio-Missouri Riv. Nat. Res. Dist.*, 247 Neb. 975, 531 N.W.2d 531 (1995); *Maloley v. Shearson Lehman Hutton, Inc.*, 246 Neb. 701, 523 N.W.2d 27 (1994). "[A]s a procedural equivalent to a trial, a summary judgment is an extreme remedy because a summary judgment may dispose of a crucial question in litigation, or the litigation itself, and may thereby deny a trial to the party against whom the motion for summary judgment is directed." *Wachtel v. Beer*, 229 Neb. 392, 399, 427 N.W.2d 56, 61 (1988). Accord *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992).

### MUTUAL MISTAKE

Nebraska has long followed the majority rule that a settlement agreement which purports to release any and all claims for accident-related damages may be set aside on grounds of mutual mistake where there are injuries of a serious character wholly unknown to the parties which were not taken into consideration when the release was executed. See, *Frahm v. Carlson*, 214 Neb. 532, 334 N.W.2d 795 (1983); *Swartz v. Topping*, 191 Neb. 41, 213 N.W.2d 718 (1974); *Schmidt v. City of Lincoln*, 151 Neb. 317, 37 N.W.2d 500 (1949); *La Rosa v. Union P. R. Co.*, 142 Neb. 290, 5 N.W.2d 891 (1942); *Collins v. Hughes & Riddle*, 134 Neb. 380, 278 N.W. 888 (1938);

*Simpson v. Omaha & C. B. Street R. Co.*, 107 Neb. 779, 186 N.W. 1001 (1922).

In the seminal *Simpson* case, this court set forth:

Where one who has sustained personal injuries, and with his attention directed to the known injuries, which are trivial in their nature, contracts for the settlement of his damages with reference thereto, in ignorance of other and more serious injuries, both parties at the time believing that the known injuries are all the injuries sustained, then there is a mutual mistake, and the release, although couched in general terms, should be held not to be a bar to an action for the more serious and unknown injuries.

107 Neb. at 783, 186 N.W. at 1003.

This court further explained the rule, as follows:

[T]he true rule is that the mistake must relate to either a present or past fact or facts that are material to the contract of settlement, and not to an opinion as to future conditions as the result of present known facts. A mistake as to the future development of a known injury is a matter of opinion, and is not one of fact, and is not such a mistake as will avoid a release; but, where the mistake is as to the extent of the injury due to unknown conditions or relates to injuries that were wholly unknown, then the release may be avoided, unless it further appears that the parties were contracting with respect to possible unknown injuries, and the releasor intended to relinquish all claims, whether known or unknown.

107 Neb. at 782, 186 N.W. at 1003.

In *Simpson*, the plaintiff fell while boarding a streetcar. The only known personal injury consisted of a superficial injury to the plaintiff's knee. The $50 release was for torn clothing and the superficial knee injury. After a few months, serious physical and emotional injuries developed. The release recited that the defendant was released " 'from any and all cause or causes of action, costs, charges, claim or demand, of whatever name or nature, in any manner arising or to grow out of an accident occurring . . . .' " *Id.* at 780, 186 N.W. at 1002. In *Simpson*, we held that the release was executed under a mutual mistake of the parties, and the plaintiff was not barred from recovery of

damages for the injuries that were unknown to both parties at the time the release was executed.

In a case factually similar to the instant cause, the U.S. Court of Appeals for the Eighth Circuit correctly applied Nebraska law in reversing a district court summary judgment and remanding the cause for further proceedings because the determination of the intention of the parties at the signing of a release was a fact question based on the lower court record. *McCamley v. Moss*, 587 F.2d 391 (8th Cir. 1978). In *McCamley*, the claimant was involved in an automobile accident and sustained some apparently minor back and neck injuries as a result of the accident. X rays failed to indicate any fractures, and the claimant's back and neck pains soon subsided. The insurance company ultimately tendered the claimant $700 for car repair, out-of-pocket expenses, medical treatment, and injuries (known and unknown, developed or undeveloped). Sixteen months after the accident, additional x rays were taken, and the x rays revealed a possible compression fracture of the C-6 vertebral disk. As a result of the original x rays showing no fractures and the relatively minor $700 payment in consideration for the release, the Eighth Circuit held that "Moss did not establish, within the language of *Simpson*, that 'the releasor [McCamley] intended to relinquish all claims, whether known or unknown.' " 587 F.2d at 395. The court went on to state that unless further evidence conclusively established that the claimant's present medical complaint reflects the future development of a known injury, "the issues [of intent and mutual mistake] should be submitted to a jury." *Id.*

Oliver, to avoid the release in this case, must demonstrate that his present condition is not the result of the development of an injury known at the execution of the release, but is an injury that was wholly unknown at the release's signing. A mistake as to the future development of a known injury is not such a mistake as will avoid a release. *Simpson v. Omaha & C. B. Street R. Co.*, 107 Neb. 779, 186 N.W. 1001 (1922). Put another way, an inaccurate or incomplete diagnosis is often the type of mistake that relates "to either a present or past fact or facts that are material to the contract of settlement" and may lead to a mutual mistake of fact by parties during settlement negotiations. See *id*. Whereas a mistaken or uncertain

prognosis of a known injury is most often a matter of opinion, it is not one of fact and is not such a mistake as will avoid a release.

To ultimately succeed in setting aside the release, Oliver must produce evidence to establish that the parties were not aware of any serious injuries caused by the accident and that the parties contracted for a settlement only with respect to the known minor injuries. In the December 18, 1991, St. Joseph's history and physical form dictated by Dr. Charles Taylon, it was revealed that Oliver saw his private physician the day after the accident and that "cervical spine films were obtained and no fractures were noted. The patient was seen in follow-up in Emergency Department at St. Joseph's. Upon reviewing the films it was not felt the patient had a fracture and he was discharged home." Any fracture-type injury to the cervical vertebra, for which Oliver now seeks recovery, was not disclosed by the x rays taken shortly after the accident. In addition, Serratore's affidavit confirmed that Oliver had contacted the insurer on October 23 and reported that he had received x rays on October 22 and that "nothing was wrong with him other than a twisted neck." Oliver and the insurer reached a settlement agreement on this very same date. This evidence, together with the fact that only $500, plus current medical bills, was paid in consideration for the release, creates an inference that the parties may have been contracting solely for a minor "twisted neck" injury, claimed by Oliver as of October 23, rather than the later-diagnosed fracture of the second cervical vertebra.

## INTENTION OF PARTIES

Language in an insurer-prepared release, such as the one in this case, which indicates that the settlement covers all injuries, "known and unknown," does not in and of itself conclusively demonstrate the parties' intent to settle claims for unknown injuries. *Id*. See, also, *McCamley v. Moss*, 587 F.2d 391 (8th Cir. 1978) (applying Nebraska law).

Clark did not establish, within the language of *Simpson*, that "the releasor [Oliver] intended to relinquish all claims, whether known or unknown." Although the release form and the insurance adjusters' affidavits support the conclusion that the

*insurer* may have contracted with respect to unknown injuries, that is not dispositive of Oliver's intent to relinquish "all unknown and unanticipated injuries and damages resulting from said accident . . . as well as to those now disclosed." The record in this case does not establish *as a matter of law*, under the *Simpson* standard, that both parties intended the release to cover possible unknown injuries arising from the accident.

The medical evidence concerning the status of Oliver's injury is not clear, since it merely consists of a history and physical form from St. Joseph's and a radiology report from Immanuel. There was no conclusive evidence introduced by either party regarding the causation of Oliver's cervical vertebra fracture as it was diagnosed on December 5, 1991. The record is unclear as to whether Oliver's present condition resulted from the development of a known injury to the neck or is due to injuries wholly unknown at the execution of the release. In light of the circumstances surrounding the signing of the release and the status of the medical evidence, we hold that a genuine issue of fact exists as to whether the parties intended the release to cover the injury Oliver presently claims he sustained in the accident.

## JUDGMENT

Accordingly, we reverse the summary judgment entered against Oliver and remand the cause to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.