TERRY A. TALLE, APPELLEE AND CROSS–APPELLANT, V. NEBRASKA DEPARTMENT OF SOCIAL SERVICES, APPELLANT AND CROSS–APPELLEE.

541 N.W.2d 30

Filed December 22, 1995.   No. S–94–548.

Don Stenberg, Attorney General, and Royce N. Harper for appellant.

Steven D. Burns, of Burns & Associates, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

This is a tort claims action brought under the provisions of Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1994) in which the plaintiff–appellee and cross–appellant, Terry A. Talle, alleges she was damaged as the proximate result of the negligent placement of a minor boy in foster care with her by the defendant–appellant and cross–appellee, Nebraska Department of Social Services. The district court entered a partial summary judgment in favor of Talle on the issue of liability, and following trial thereafter awarded her the sum of $142,600 in damages. The department thereupon appealed to the Nebraska Court of Appeals, and we, on our own motion, in order to regulate the caseloads of the two courts, transferred the appeal to this court. The assignments of error argued in the department's brief are

that the district court (1) wrongly found there to be no genuine issue of material fact concerning whether Talle assumed the risk, (2) incorrectly awarded Talle hedonic damages, and (3) erroneously considered certain damages evidence. Talle cross–appealed, assigning as error, in essence, the claimed inadequacy of the damages awarded. For the reasons hereinafter set forth, we affirm the partial summary judgment on the issue of liability, reverse the district court's award of damages, and remand the cause for further proceedings on that issue. Our rationale in so ruling makes consideration of the cross–appeal unnecessary.

In October 1989, Christy Johnson Strawder, a department caseworker, contacted Talle about the possibility of assuming foster care responsibility for Ronald Heinen, then a 13–year–old boy. Talle expressed an interest, and Strawder informed her as to Heinen's age, that he used hearing aids, and that he was at the time hospitalized for a tonsillectomy. When Talle visited Heinen in the hospital, no one informed her that in addition to the tonsillectomy, Heinen was also admitted for evaluation concerning his suicidal and homicidal threats. In fact, Heinen had exhibited a history of self–mutilation, uncontrollable anger, emotional abuse, physical abuse, sexual abuse, lying, stealing, and suicidal and homicidal tendencies.

In November 1989, Talle and her husband agreed to act as foster parents for Heinen on the bases of having had him spend a night in their home and Talle's conversations with Strawder. Accordingly, Talle and Strawder signed a department "Child Placement Agreement" on November 8, 1989, in which the department agreed to "share with the foster care facility prior to placement and during placement, information known about the child's life situation as appropriate and necessary, including basic medical history of the child, immunizations and current health problems." The agreement also provided that upon 2 weeks' notice, except in the case of an emergency, Talle could have the department remove Heinen from her care.

According to Talle, at no time prior to or after the placement of Heinen in the Talle home did the department inform Talle of Heinen's violent behavior or any of the professional observations and opinions concerning it. In January 1990,

Heinen began to physically and verbally assault Talle. His assaultive behavior toward Talle continued and grew progressively worse over the following few months. Talle called Strawder after many of the assaults, and occasionally, the police were called. In response, Strawder advised Talle to consult with Heinen's treating psychotherapist. At times Talle consulted with the psychotherapist after Heinen would abuse her. In response, the psychotherapist gave Talle some general guidance on how to control Heinen's behavior, but no specifics.

Strawder offered no additional training to Talle to enable her to handle Heinen's violent behavior. Instead, each time Talle contacted Strawder about Heinen's assaultive behavior, Strawder encouraged Talle to "hang in there" because Heinen was simply going through a stage that could be remedied with a stable family's love and care. Strawder recommended that the Talles complete guardianship proceedings to demonstrate their commitment to Heinen, stating that this could remedy the violence.

In the summer of 1990, the Talles acquired guardianship of Heinen. Heinen continued physically abusing Talle through October 1990, when she barred Heinen from her home as the result of learning that he had sexually assaulted her neighbor's daughters. As a consequence of her experiences with Heinen and the department, Talle suffers from depression and posttraumatic stress syndrome.

In directing our attention to the department's assumption of the risk claim, we note at the outset that summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995); *Oliver v. Clark*, 248 Neb. 631, 537 N.W.2d 635 (1995). With that in mind, we next recall that

> [w]hen a defendant pleads the affirmative defense of assumption of risk in a negligence action, the defendant has the burden to establish the elements of assumption of risk before that defense, as a question of fact, may be

submitted to the jury. . . .

. . . " ' "Before the defense of assumption of risk is submissible to a jury, evidence must show that the plaintiff (1) knew of the danger, (2) understood the danger, and (3) voluntarily exposed himself or herself to the danger which proximately caused the plaintiff's damage. . . . '[E]xcept where he expressly so agrees, a plaintiff does not assume a risk of harm *arising from the defendant's conduct* unless he then knows of the existence of the risk and appreciates its unreasonable character, or the danger involved, including the magnitude thereof, and voluntarily accepts the risk.' . . ." ' "

(Emphasis in original.) *Winslow v. Hammer*, 247 Neb. 418, 427–28, 527 N.W.2d 631, 637 (1995) (quoting, in part, *Grote v. Meyers Land & Cattle Co.*, 240 Neb. 959, 485 N.W.2d 748 (1992)).

The standard to be applied in determining whether a plaintiff has assumed the risk of injury is a subjective one based upon the particular facts and circumstances of the event. In this regard, it differs from contributory negligence, in which an objective standard is applied. *McDermott v. Platte Cty. Ag. Socy.*, 245 Neb. 698, 515 N.W.2d 121 (1994).

" 'Assumption of risk rests in contract or in the principle expressed by the ancient maxim, *"volenti non fit injuria,"* whereas contributory negligence rests in tort. The former involves a choice made more or less deliberately and negatives liability without reference to the fact that the plaintiff may have acted with due care, whereas the defense of contributory negligence implies the failure of the plaintiff to exercise due care. As stated in some decisions, assumption of risk is a mental state of willingness, whereas contributory negligence is a matter of conduct.' . . ."

*Cassio v. Creighton University*, 233 Neb. 160, 173, 446 N.W.2d 704, 713 (1989).

We also remind ourselves that in reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences

deducible from the evidence. *Western Sec. Bank v. United States F. & G. Co.*, 248 Neb. 679, 539 N.W.2d 15 (1995); *Horace Mann Cos. v. Pinaire*, 248 Neb. 640, 538 N.W.2d 168 (1995); *Oliver v. Clark, supra*. Even when viewed in this light, the evidence shows as a matter of law that Talle did not assume the risk of injury.

There are no facts which can show that Talle knew of or understood the danger, and therefore, the department failed to meet its burden in having its assumption of the risk defense submitted to the trier of fact as a question of fact. Indeed, the evidence shows that Talle did not know or understand the risk. Not only did the department fail to inform Talle of Heinen's violent propensities, the department lied by telling Talle that Heinen had never acted violently before. In addition, the department encouraged Talle to continue her efforts, as Heinen's conduct was merely a stage he was going through. The department also encouraged Talle to increase her commitment to Heinen by becoming his legal guardian. Thus, the department actively prevented Talle from fully understanding the danger she was experiencing.

That being so, we consider next the matter of hedonic damages, which we have previously defined in this context as "the damages arising from loss of the enjoyment of life, as measured separately from the economic productive value that an injured person would have had." *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 661, 538 N.W.2d 732, 739 (1995). Therein, this court held that "while consideration of loss of the enjoyment of life may properly be considered as it relates to pain and suffering, and to disability, it is improper to treat it as a separate category of nonpecuniary damages." *Id.* at 664, 538 N.W.2d at 741. Consequently, the district court erred in awarding Talle hedonic damages as a separate category of nonpecuniary damages.

The department's final claim is that the district court erred in receiving the testimony of Stan Smith, an economist who established a formula for calculating the value of lost enjoyment of life. Smith is the same economist whose testimony on the value of lost enjoyment of life was held inadmissible in *Anderson/Couvillon*. In that case, we held that the three models

on which Smith bases his formula for calculating the value of lost enjoyment of life were flawed in one way or another and that his testimony failed to satisfy Neb. Evid. R. 702, Neb. Rev. Stat. § 27–702 (Reissue 1989). As his testimony and the models on which he bases his formula were substantially the same in this case as they were in *Anderson/Couvillon*, the district court erred in admitting his testimony.

Although the erroneous admission of evidence in a bench trial of a law action is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's necessary factual findings, a reversal is warranted if the record shows that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through the use of erroneously admitted evidence. *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs., supra.* The record in this case shows that the district court specifically relied on Smith's testimony in awarding Talle damages.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL
ON THE ISSUE OF DAMAGES.

WHITE, C.J., concurring in part, and in part dissenting.

I concur in that part of the majority opinion affirming the sustaining of the motion for summary judgment as to the liability of the Nebraska Department of Social Services. I dissent, however, from the determination to remand on the issue of damages. See *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995) (White, C.J., dissenting in part).

LANPHIER and GERRARD, JJ., join in this concurrence and dissent.

CAPORALE, J., dissenting in part.

While I agree with the majority opinion regarding the issue of damages and the evidence relating to it, I dissent from that portion of the opinion pertaining to the issue of liability.

The majority correctly observes that in reviewing the district court's summary judgment holding the Nebraska Department of Social Services liable to Terry A. Talle, the evidence must be

viewed in a light most favorable to the department, and that the department must be given the benefit of all reasonable inferences deducible from the evidence. Viewed in this light, the evidence is that Talle encountered ever more violent physical and verbal abuse from her ward, Ronald Heinen, from January until October 1990, when Heinen was forced to leave the Talles' home.

Thus, for 10 months, Talle knew that Heinen's behavior presented an escalating threat to her health. She obviously knew as well that he was under psychiatric care because she took him to his psychotherapist and consulted with the psychotherapist about his abusive behavior. Nonetheless, rather than exercise her contractual option to put Heinen out of her home, she continued to act as his foster parent and later on as his guardian. And when she did have Heinen removed, she did so not because of his actions toward her, but because of his assaults on others. Surely the law can expect that at some point, one, as a matter of fact, becomes responsible for one's own well–being!

While I cannot, and do not, condone governmental lying, no matter how pervasive it may have become, neither can I condone, as a matter of law, Talle's actions in maintaining the status quo in her own household for so protracted a period of time, regardless of how much the department entreated her to do so. I submit that although the evidence need not necessarily have led a fact finder to determine that Talle had assumed the risk of her injuries, the evidence would certainly support such a factual finding if such were made. However, that is not for this court to decide. On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Maloley v. Shearson Lehman Hutton, Inc.*, 246 Neb. 701, 523 N.W.2d 27 (1994).

Because a question of fact exists as to whether Talle assumed the risk of her injuries, the granting of summary judgment on the issue of liability was erroneous.

CONNOLLY, J., joins in this dissent.