MELODY M. FOSSETT, APPELLANT, V. BOARD OF REGENTS OF
THE UNIVERSITY OF NEBRASKA, DOING BUSINESS AS UNIVERSITY
OF NEBRASKA MEDICAL CENTER, ET AL., APPELLEES.

605 N.W.2d 465

Filed February 4, 2000.   No. S-98-442.

William B. Woodruff for appellant.

Gregory M. Thomas, of Sodoro, Daly & Sodoro, for
appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN,
MCCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.
Melody M. Fossett filed suit against the Board of Regents of
the University of Nebraska, doing business as University of
Nebraska Medical Center; Randall E. Brand, M.D.; Kenric
Murayama, M.D.; Timothy McCashland, M.D.; Suzanne Sasse,
M.D.; and Boston Scientific Corporation for medical malprac-

tice. Brand, Murayama, and McCashland (appellees) filed motions for summary judgment. The district court found that Fossett's evidence failed to present a genuine issue of material fact and granted summary judgment for appellees. Fossett conceded at oral argument that summary judgment was proper as to McCashland. We address whether statements made by Brand and Murayama created a genuine issue of fact as to whether they breached the standard of care. We conclude that Brand's statements to Fossett and her husband created a reasonable inference that Brand did not meet the applicable standard of care in his treatment of Fossett. We therefore reverse summary judgment in favor of Brand and affirm as to Murayama and McCashland.

## BACKGROUND

On August 7, 1994, Fossett was admitted to the University of Nebraska Medical Center for severe pain on her right side and back, around the area of her ribs. Murayama performed an ultrasound on her abdomen. Murayama's answers to requests for admissions indicate that the ultrasound proved normal; there were no free fluid collections in Fossett's abdomen at that time. On August 8, Brand performed an endoscopic retrograde cholangiopancreatography (ERCP) on Fossett. During the ERCP, a false passage was created which constituted a perforation of the duodenum. On August 9, Fossett underwent another procedure for removal of her gallbladder, at which time a large amount of bilious fluid was found in her peritoneal cavity.

Fossett contends that the false passage created during the ERCP introduced enterococcus faecalis into her abdominal cavity, which developed into at least three intra-abdominal abscesses. As a result, Fossett brought this action against appellees for medical malpractice. In her second amended petition, Fossett alleged liability under the theories of negligence and res ipsa loquitur.

In response, appellees filed motions for summary judgment. At the hearing, appellees presented evidence which consisted of their curricula vitae, as well as their affidavits stating they had committed no negligence and had complied with the applicable standard of care. At that time, Fossett was given 60 days to find an expert to testify on the requisite standard of care and evalu-

ate appellees' professional conduct. When Fossett presented her evidence at the second hearing, it consisted of affidavits by Fossett, Fossett's husband, Fossett's mother, and Fossett's counsel, which included portions of appellees' answers to interrogatories and requests for admissions. Fossett offered no expert opinion to establish any professional negligence by appellees. Finding that the evidence and theories proffered by Fossett failed to present a genuine issue of material fact, the court sustained the motions for summary judgment and dismissed Fossett's amended petition as to appellees.

As mentioned, Fossett's second amended petition claimed that appellees were liable in negligence and under the doctrine of res ipsa loquitur. The theory of res ipsa loquitur was again proffered by Fossett's counsel at the summary judgment hearing on December 5, 1997. In her brief to this court, however, Fossett has abandoned her theory of Brand's and Murayama's liability under the doctrine of res ipsa loquitur.

In Fossett's appeal filed May 4, 1998, her argument focuses on the legal effect of alleged statements of admission by Brand and Murayama. According to the affidavits introduced by Fossett, when Fossett's mother asked Murayama why he had not removed the fluid from Fossett's abdomen, he replied, "I don't know why I left it there, I just left it there." When Fossett asked Murayama why he had not removed the fluid, he replied that he thought it would absorb into her body. When Fossett discussed with Brand the fluid left in her abdominal cavity by Murayama, Brand told her that "leaving it in there was a mistake."

Regarding statements made by Brand, Fossett introduced affidavits that after Brand performed the ERCP, he told her husband that "I have punctured her . . . duodenum. I made a false passage, I made a terrible mistake, I'm very very sorry." Brand told Fossett's husband that there might be fluid leaking into Fossett's abdominal cavity. When Fossett's husband told Brand that it was okay, Brand responded, "No, it isn't. This shouldn't have happened." In addition, when Fossett later asked Brand what went wrong with the ERCP, he told her that the puncture caused by the tube going down her throat was not supposed to have happened.

Since Fossett did not assign and argue res ipsa loquitur, we will not consider Brand's and Murayama's liability under that

theory. We address, therefore, whether admissions by Brand and Murayama eliminated the requirement of medical experts for the purpose of summary judgment.

## ASSIGNMENTS OF ERROR

Fossett claims that the district court erred in finding there was no genuine issue of material fact and in sustaining the motions for summary judgment.

## STANDARD OF REVIEW

■ In reviewing an order of summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Schweitzer v. American Nat. Red Cross*, 256 Neb. 350, 591 N.W.2d 524 (1999).

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *NECO, Inc. v. Larry Price & Assocs.*, 257 Neb. 323, 597 N.W.2d 602 (1999); *Fackler v. Genetzky*, 257 Neb. 130, 595 N.W.2d 884 (1999).

■ On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *NECO, Inc. v. Larry Price & Assocs., supra*; *Dvorak v. Bunge Corp.*, 256 Neb. 341, 590 N.W.2d 682 (1999).

■ As a procedural equivalent to a trial, a summary judgment is an extreme remedy because a summary judgment may dispose of a crucial question in litigation, or the litigation itself, and may thereby deny a trial to the party against whom the motion for summary judgment is directed. *Bruning v. Law Offices of Ronald J. Palagi*, 250 Neb. 677, 551 N.W.2d 266 (1996); *Oliver v. Clark*, 248 Neb. 631, 537 N.W.2d 635 (1995).

## ANALYSIS

We first note Fossett's concession at oral argument that summary judgment was proper as to McCashland. We therefore affirm the district court's order with respect to McCashland and

proceed to Fossett's assignments of error regarding Brand and Murayama.

### EXPERT TESTIMONY AND COMMON KNOWLEDGE EXCEPTION

■ Ordinarily, in a medical malpractice case, the plaintiff must prove the physician's negligence by expert testimony. The rule is expressed in *Halligan v. Cotton*, 193 Neb. 331, 335, 227 N.W.2d 10, 12-13 (1975), that "whether a specific manner of treatment or exercise of skill by a physician or surgeon demonstrates a lack of skill or knowledge or a failure to exercise reasonable care is a matter that must usually be proved by expert testimony."

There is a recognized exception to this rule, however, known as the "common knowledge exception." The exception is stated in *Halligan v. Cotton*, 193 Neb. at 335-36, 227 N.W.2d at 13, that "[o]ne of the exceptions to the requirement of expert testimony is the situation where the evidence and the circumstances are such that the recognition of the alleged negligence may be presumed to be within the comprehension of laymen." Generally, this exception is applicable in cases where the physician fails to remove a foreign object from a patient's body or where a patient enters the hospital for treatment on one part of the body and sustains injury to another part of the body. See, *Boyd v. Chakraborty*, 250 Neb. 575, 583, 550 N.W.2d 44, 49 (1996) ("[i]n sum, this case involves the leaving of a foreign object, namely, a tube fragment, in a patient's body, which fragment should have been removed by an act understandable by the jury without technical evidence. . . . This is within the realm of knowledge of laypersons"); *Swierczek v. Lynch*, 237 Neb. 469, 478, 466 N.W.2d 512, 518 (1991) ("[i]t is within the common knowledge and experience of a layperson to determine that an individual does not enter the hospital for extraction of her teeth and come out with an injury to nerves in her arms and hands, without some type of negligence occurring"). In contrast, the common knowledge exception has been held not to apply where the defendant physician's negligence is not obvious from the facts and circumstances of the case. See, *Hanzlik v. Paustian*, 211 Neb. 322, 318 N.W.2d 712 (1982) (holding that negligence could not be presumed to be within comprehension of layper-

sons where patient's esophagus was perforated during dilation), *disapproved on other grounds, Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992); *Reifschneider v. Nebraska Methodist Hosp.*, 222 Neb. 782, 387 N.W.2d 486 (1986) (declining to apply common knowledge exception where to do so would be assuming that ordinary trier of fact, judge or jury, is capable of assessing status of emergency room patient and determining whether or not restraints were needed).

Fossett has raised the common knowledge exception in relation to Brand, but does not explain how the creation of a false passage or perforation of the duodenum during an ERCP constitutes negligence within the common knowledge of a layperson. Brand and Murayama argue that an ERCP is a very technical and specialized medical procedure that involves surgical expertise. We agree that the creation of a false passage during this procedure is not the type of injury that falls within the common knowledge exception. We therefore conclude that there is no issue of fact as to Brand's negligence under the common knowledge exception.

Fossett has also raised the common knowledge exception in relation to Murayama. Murayama operated on Fossett the day after Brand performed the ERCP. When Murayama entered Fossett's peritoneal cavity, he found a large amount of bilious peritoneal fluid. Rather than remove the fluid, he left it in Fossett's abdominal cavity. Murayama told Fossett that he did not remove the fluid because he thought it would absorb into her body. Fossett was released from the hospital 5 days after Murayama performed the operation, but returned just 2 days later suffering from extreme pain in her abdomen, chest, right leg, and operative incision. Fossett argues that these facts, taken together with Brand's statement to her that leaving the fluid in her abdominal cavity was a mistake, establish negligence under the common knowledge exception. This argument assumes that the trier of fact is capable of determining whether it is accepted medical practice for a surgeon to leave bodily fluid where it is found in a patient during an operation. This court has indicated a hesitancy in placing such a burden on the trier of fact. See, *Reifschneider v. Nebraska Methodist Hosp., supra*; *Halligan v. Cotton*, 193 Neb. 331, 227 N.W.2d 10 (1975). We believe that

expert testimony was required to establish whether Murayama was negligent in failing to remove the fluid from Fossett's abdomen. We therefore conclude that there was no issue of fact as to Murayama's negligence under the common knowledge exception.

### STATEMENTS MADE BY BRAND AND MURAYAMA

Fossett next argues that certain statements made by Brand and Murayama to her and her family raise genuine issues of fact and thereby eliminate the requirement for expert testimony. Affidavits introduced by Fossett contain statements of fact allegedly made by Brand and Murayama to Fossett, Fossett's husband, and Fossett's mother. We accept these statements as true because on appellate review of summary judgment, the court views the evidence in the light most favorable to the party against whom summary judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. See *Schweitzer v. American Nat. Red Cross*, 256 Neb. 350, 591 N.W.2d 524 (1999).

In this case, Brand and Murayama each filed an affidavit in support of the motion for summary judgment. Each affidavit stated that the care rendered to Fossett complied with the applicable standard of care for a similar physician under similar circumstances in a similar community. This is sufficient for summary judgment purposes to present a prima facie showing that appellees were not negligent in their treatment of Fossett. See *Boyd v. Chakraborty*, 250 Neb. 575, 550 N.W.2d 44 (1996) (holding that affidavit of defendant physician in malpractice case which states that defendant did not breach appropriate standard of care presents prima facie case of lack of negligence for purposes of summary judgment). The burden then shifted to Fossett to rebut this evidence and to establish the existence of a genuine issue of material fact. Since Fossett presented no medical expert opinion to contradict Brand's and Murayama's affidavits, we must determine whether statements made by Brand and Murayama create a reasonable inference of negligence on their part.

Fossett argues that under *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994), Brand's and Murayama's statements create

a genuine issue of material fact. In *Healy*, the plaintiff introduced the defendant doctor's deposition in opposition to the defendant doctor's motion for summary judgment. In one portion of the deposition, the defendant doctor stated that "he would have deviated from the standard of care if he had failed to inform Sherry Healy that death was a potential side effect of the chemotherapy." *Id.* at 8, 511 N.W.2d at 503. To establish a breach of that standard, the plaintiff offered his own affidavit, which stated that " 'at no time prior to or during the course of the chemotherapy treatment' did [the defendant doctor] inform Sherry Healy that death was a potential side effect of the chemotherapy." *Id.* at 9, 511 N.W.2d at 503. The court found that the plaintiff's affidavit directly conflicted with evidence presented by the defendant doctor and therefore created a factual issue. The court held that because there was a genuine issue of material fact, summary judgment was improper.

We recognize that *Healy* implicitly stands for the proposition that a defendant physician's own statements can be used to create a factual issue in a medical malpractice case. *Healy* is factually distinguishable, however, from the case at hand because in *Healy*, the plaintiff introduced a direct statement by the defendant doctor on the applicable standard of care. The plaintiff then offered his own affidavit which stated that the defendant doctor had not acted in conformity with that standard. In *Healy*, the defendant doctor stated that it would have been a deviation from the applicable standard of care if he had failed to inform the patient that death was a potential side effect of the treatment. In this case, neither party has set out the applicable standard of care. As a result, the record contains no indication of the standard by which to evaluate Brand's and Murayama's professional conduct. Therefore, *Healy* does not control the outcome of Fossett's appeal.

However, this is not a typical case in which the plaintiff has failed to produce any evidence from a qualified medical expert. Fossett has introduced statements by Brand and Murayama that constitute evaluations of their own performances. According to the affidavits introduced by Fossett, when Fossett's mother asked Murayama why he had not removed the fluid from Fossett's abdomen, he replied, "I don't know why I left it there,

I just left it there." When Fossett asked Murayama why he had not removed the fluid, he replied that he thought it would absorb into her body. When Fossett discussed with Brand the fluid left in her abdominal cavity by Murayama, Brand told her that "leaving it in there was a mistake."

We agree with the district court that these statements are not sufficient to create an issue of fact as to Murayama. These statements provide no insight into the requisite standard of care for treating Fossett, who had infectious fluid in her abdomen. The mere statement by Brand that "leaving it in there was a mistake," does not create a reasonable inference of negligence. A mistake is not synonymous with negligence. We therefore conclude that the district court was correct in granting summary judgment in favor of Murayama.

In reference to Brand, however, there is more evidence of the requisite standard of care and his failure to meet that standard. According to the affidavits introduced by Fossett, Brand approached Fossett's husband after he performed the ERCP and said, "I have punctured her duodenum. I made a false passage, I made a terrible mistake, I'm very very sorry." Brand told Fossett's husband that there might be fluid leaking into Fossett's abdominal cavity. When Fossett's husband told Brand that it was okay, Brand responded, "No, it isn't. This shouldn't have happened." In addition, when Fossett later asked Brand what went wrong with the ERCP, he told her that the puncture caused by the tube going down her throat was not supposed to have happened.

Brand's statements to the effect that the puncture should not have happened constitute an evaluation of his own performance. Viewing these statements in a light most favorable to Fossett and giving her the benefit of all reasonable inferences, we determine that Brand's statements imply that he did not meet the requisite standard of care. Therefore, the district court erred in granting summary judgment in favor of Brand. We reverse.

## CONCLUSION

The district court correctly entered summary judgment in favor of McCashland and Murayama. We therefore affirm with respect to McCashland and Murayama. The district court erred

in granting Brand summary judgment because his statements create a genuine issue of fact. We therefore reverse with respect to Brand.

AFFIRMED IN PART, AND IN PART REVERSED.

CONNOLLY, J., dissenting.

I respectfully dissent. I cannot reconcile the majority's result with our firmly established precedent. In my opinion, the district court correctly determined that Brand's statements to Fossett and her family created no genuine issue of material fact.

The majority bases its decision on the fact that Brand made certain "statements" or "admissions" to Fossett and her family that constituted an evaluation of his own performance. Fossett introduced affidavits which showed that Brand made the following statements: "I have punctured her . . . duodenum. I made a false passage, I made a terrible mistake, I'm very very sorry. . . . No, it isn't [okay]. This shouldn't have happened." In addition, according to Fossett, he told her that she had been "punctured" and that "the injury caused by the tube going down into [her] throat during the E.R.C.P. was not supposed to happen." It is clear, however, that when all of Brand's comments are read together, they give no indication of the requisite standard of care or whether his actions complied with that standard.

I fail to see how these comments are sufficient to satisfy the requirement that professional negligence be proved by expert testimony. There is no indication in Brand's comments on whether his manner of treatment and exercise of skill demonstrated a lack of skill or knowledge or a failure to exercise reasonable care. Although his admissions are certainly sufficient to prove a prima facie case on the issue of causation, they are not sufficient to obviate the usual necessity for expert testimony on the standard of care and skill and its exercise. In short, statements or admissions characterized as "mistakes" do not necessarily mean that a standard of care has been violated.

We have long held that a physician's negligence, unless brought under the res ipsa loquitur doctrine, must be proved by expert testimony or must fall within the common knowledge exception. See *Halligan v. Cotton*, 193 Neb. 331, 227 N.W.2d 10 (1975). We have even held that despite a physician's admissions

on causation, expert testimony is still required on the standard of care and skill and its exercise. See *Halligan, supra.*

In *Halligan,* we carefully distinguished the plaintiff's case from other cases in which defendant doctors had admitted *negligence*. The court stated, "In the present case we have no admission by Dr. Cotton that his conduct was negligent. Such an admission does not follow from his testimony even by inference." *Id.* at 339, 227 N.W.2d at 14.

I believe that *Halligan* requires this court to affirm the district court's decision to grant summary judgment in favor of Brand. The record demonstrates a complete absence of expert testimony on the applicable standard of care and whether Brand complied with that standard in his treatment of Fossett. Since the majority correctly finds that the facts do not satisfy the common knowledge exception, expert opinion testimony is required to raise an issue of fact as to Brand's negligence.

Brand's affidavit stated that his treatment of Fossett complied with the applicable standard of care for a similar physician under similar circumstances in a similar community. This was sufficient for summary judgment purposes to present a prima facie showing that he was not negligent in his treatment of Fossett. See *Boyd v. Chakraborty,* 250 Neb. 575, 550 N.W.2d 44 (1996). The burden then shifted to Fossett to rebut this evidence and to establish the existence of a genuine issue of material fact. Brand's comments to Fossett and her family simply do not create an issue of fact because they do not establish the applicable standard of care. How can a defendant be found liable for breach of an undefined duty?

In my opinion, Fossett failed to rebut Brand's prima facie showing that he met the standard of care. Therefore, I would affirm the decision of the district court.

STEPHAN, J., joins in this dissent.